

# Illinois Department of Insurance

**JB PRITZKER**
Governor

**ROBERT H. MURIEL**
Director

November 4, 2020

Scottsdale Insurance Company
One West Nationwide Blvd
1-01-701
Columbus, OH

Case Number 2020-CH-04433

Gentlemen:

Enclosed please find a copy of the enclosed Summons and Complaint mailed to me as your agent for service of process and received in my Springfield Office on November 4, 2020 in the case of Extended Care Consulting LLC, Major Hospital vs. your company et al.

Sincerely,

Robert H. Muriel
Director of Insurance

RM:ms: pas
Encl.

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

320 West Washington St.
Springfield, Illinois 62767-0001
(217) 782-4515
insurance.illinois.gov

EXHIBIT 1

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
10/30/2020 11:21 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH04433

10972937

FILED DATE: 10/30/2020 11:21 AM   2020CH04433

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | (08/01/18) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Extended Care Consulting LLC, Major Hospital

(Name all parties)

v.

Scottsdale Insurance Company, Nationwide Ins.

Case No.   2020-CH-04433

## ☐ SUMMONS  ☑ ALIAS SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons,** not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 1 of 3



EXHIBIT 1

**Summons - Alias Summons**                          **(08/01/18) CCG 0001 B**

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

Atty. No.: 48493

Atty Name: Holly Turner

Atty. for: Plaintiffs

Address: 2201 Main Street

City: Evanston

State: IL    Zip: 60601

Telephone: (708) 476-4813

Primary Email: hturner@extendedcarellc.com

Witness: 10/30/2020 11:21 AM DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with
Defendant or other person):

FILED DATE: 10/30/2020 11:21 AM 2020CH04433

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

EXHIBIT 1

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

FILED DATE: 10/30/2020 11:21 AM 2020CH04433

- Richard J Daley Center
  50 W Washington
  Chicago, IL 60602

- District 2 - Skokie
  5600 Old Orchard Rd
  Skokie, IL 60077

- District 3 - Rolling Meadows
  2121 Euclid
  Rolling Meadows, IL 60008

- District 4 - Maywood
  1500 Maybrook Ave
  Maywood, IL 60153

- District 5 - Bridgeview
  10220 S 76th Ave
  Bridgeview, IL 60455

- District 6 - Markham
  16501 S Kedzie Pkwy
  Markham, IL 60428

- Domestic Violence Court
  555 W Harrison
  Chicago, IL 60607

- Juvenile Center Building
  2245 W Ogden Ave, Rm 13
  Chicago, IL 60602

- Criminal Court Building
  2650 S California Ave, Rm 526
  Chicago, IL 60608

### Daley Center Divisions/Departments

- Civil Division
  Richard J Daley Center
  50 W Washington, Rm 601
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- Chancery Division
  Richard J Daley Center
  50 W Washington, Rm 802
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- Domestic Relations Division
  Richard J Daley Center
  50 W Washington, Rm 802
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- Civil Appeals
  Richard J Daley Center
  50 W Washington, Rm 801
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- Criminal Department
  Richard J Daley Center
  50 W Washington, Rm 1006
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- County Division
  Richard J Daley Center
  50 W Washington, Rm 1202
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- Probate Division
  Richard J Daley Center
  50 W Washington, Rm 1202
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- Law Division
  Richard J Daley Center
  50 W Washington, Rm 801
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- Traffic Division
  Richard J Daley Center
  50 W Washington, Lower Level
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 3 of 3

EXHIBIT 1

Return Date: No return date scheduled
Hearing Date: 10/1/2020 9:30 AM - 9:30 AM
Courtroom Number: 2305
Location: District 1 Court
    Cook County, IL

FILED
6/3/2020 12:37 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL

9382931

FILED DATE: 6/3/2020 12:37 PM  2020CH04433

**Chancery Division Civil Cover Sheet**
**General Chancery Section**

(02/19/20) CCCH 0623

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

Extended Care Consulting, LLC, Major Hospital

                           Plaintiff

Case No: **2020CH04433**

           v.

Scottsdale Insurance Company

                          Defendant

### CHANCERY DIVISION CIVIL COVER SHEET
### GENERAL CHANCERY SECTION

A Chancery Division Civil Cover Sheet - General Chancery Section shall be filed with the initial complaint in all actions filed in the General Chancery Section of Chancery Division. The information contained herein is for administrative purposes only. Please check the box in front of the appropriate category which best characterizes your action being filed.

**Only one (1) case type may be checked with this cover sheet.**

| | | | | | |
|---|---|---|---|---|---|
| 0005 | ☐ Administrative Review | | 0017 | ☐ Mandamus | |
| 0001 | ☐ Class Action | | 0018 | ☐ Ne Exeat | |
| 0002 | ☑ Declaratory Judgment | | 0019 | ☐ Partition | |
| 0004 | ☐ Injunction | | 0020 | ☐ Quiet Title | |
| | | | 0021 | ☐ Quo Warranto | |
| 0007 | ☐ General Chancery | | 0022 | ☐ Redemption Rights | |
| 0010 | ☐ Accounting | | 0023 | ☐ Reformation of a Contract | |
| 0011 | ☐ Arbitration | | 0024 | ☐ Rescission of a Contract | |
| 0012 | ☐ Certiorari | | 0025 | ☐ Specific Performance | |
| 0013 | ☐ Dissolution of Corporation | | 0026 | ☐ Trust Construction | |
| 0014 | ☐ Dissolution of Partnership | | 0050 | ☐ Internet Take Down Action (Compromising Images) | |
| 0015 | ☐ Equitable Lien | | | | |
| 0016 | ☐ Interpleader | | | ☐ Other (specify) _____ | |

⦿ Atty. No.: 48493    ○ Pro Se 99500

Atty Name: Holly Turner

Atty. for: Plaintiffs

Address: 2201 Main Street

City: Evanston    State: IL

Zip: 60601

Telephone: (708) 476-4813

Primary Email: hturner@extendedcarellc.com

Pro Se Only: ☐ I have read and agree to the terms of the Clerk's Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address·

Email: _____

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org
Page 1 of 1

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

EXTENDED CARE CLINICAL, LLC; EXTENDED
CARE CONSULTING, LLC; DYER NURSING &
REHABILITATION CENTER, LLC; MAJOR
HOSPITAL DBA SM HEALTHCARE, LLC

No.

Plaintiffs,

v.

SCOTTSDALE INSURANCE COMPANY
Defendant

## **COMPLAINT**

Comes now Plaintiffs, by and through their undersigned attorney, and for their Complaint

states as follows:

## **COUNT I – Declaratory Judgment**

## **PARTIES/PEOPLE**

1.      Major Hospital dba SM Healthcare SM Healthcare, LLC is a healthcare facility

located in Indiana. They contracted with Dyer Consulting to operate a nursing facility known as

Dyer Nursing & Rehab.

2.      Dyer Nursing contracted with Extended Care Clinical, LLC and Extended Care

Consulting, LLC for services, which include contracting for insurance.

3.      Extended Care Clinical, LLC & Extended Care Consulting, LLC (hereinafter,

"ECCs") are companies that offers healthcare consulting services to long term care facilities

(nursing homes) and are both duly registered Illinois LLCs, that have their principal place of

business at 2201 Main Street, Evanston, IL 60602 (Cook County, Illinois).

4.      ECCs contracted with Worthy Insurance Group, LLC ("Worthy") to obtain liability

insurance for themselves and Dyer in connection with the nursing home operations.

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM    2020CH04433

5.      Worthy is an insurance agency whose principal place of business is located at 8140 McCormick Blvd #141, Skokie, IL 60076 (Cook County, Illinois).

6.      From their offices in Skokie, IL (Cook County), Worthy procured a liability insurance policy for Dyer and ECCs from Scottsdale Insurance Company hereinafter "Policy".

7.      Scottsdale Insurance Company ("Scottsdale") is an insurance company who issues and writes insurance policies in the State of Illinois. The policy lists their home office as Columbus, Ohio.

8.      Major Hospital, Dyer Nursing, Extended Care Clinical, LLC & Extended Care Consulting, LLC are all insureds under the Policy.

**THE POLICY**

9.      Scottsdale Insurance Company issued a Policy #SHS0000061 with a policy period of 03/01/2018 – 03/01/2019. Exhibit 1 is a true and correct of the Policy.

10.     The Policy lists Extended Care Clinical, LLC, Extended Care Consulting, LLC, and Major Hospital dba SM Healthcare SM Healthcare, LLC as insureds.

11.     The Policy was a "claims made" type policy – meaning all claims for coverage had to be made at the time the policy was in effect. However, the Policy had an incident sensitive trigger – so if an incident was reported during the policy that later developed into an actual claim or lawsuit after the policy expired, the claim would be deemed to have been made at the time of the reporting and would be covered.

12.     Specifically, the relevant Policy language states in part:

**SECTION VI—NOTICE OF CLAIMS AND POTENTIAL CLAIMS**

...

**B. Notice of Potential Claims**

2

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

If during the "policy period" any "notice manager" first becomes aware of potential "claim" against the "insured" and gives written notice during the "policy period" to us of such potential "claim," and the reasons for anticipating a "claim," with full particulars, including, but not limited to:

1. The specific "incident," act, error or omission, or the specific injury or damage, occurrence or offense;

2. The dates and persons involved;

3. The identity of anticipated or possible claimants; and

4. The circumstances by which the "insured" became aware of the potential "claim";

then any "claim," whenever made, that arises out of such reported potential "claim" shall be deemed to have been made at the time such written notice of the potential "claim" was first given to us.
(Exhibit 1, page 13)

13.    The policy states that claims can be emailed to mlsreportaloss@nationwide.com.

Specifically, items 7 & 8 of the Declaration Pages (Exhibit 1, page 1) state:

Item 7. Claim Notices:
Nationwide Management Liability & Specialty
Attention: Claims Manager
7 World Trade Center, 37th Floor
250 Greenwich Street
New York, NY 10007-0033
Telephone: (800) 423-7675
E-mail: mlsreportaloss@nationwide.com

Item 8. All Other Notices:
Nationwide Management Liability & Specialty
Attention: Claims Manager
7 World Trade Center, 37th Floor
250 Greenwich Street
New York, NY 10007-0033
Telephone: (800) 423-7675
E-mail: mlsreportaloss@nationwide.com

3

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM  2020CH04433

14.     There is no method specified in the Policy as to how the notice is to be given to Scottsdale (no specific form, format, or process must be used) other than said notice must be in writing and submitted to one of the addresses set forth above.

### The Charles Anderson Reporting

15.     Charles Anderson was a resident at Dyer the entire time the Policy was in effect. His specific dates of residency were 4/14/18 – 12/25/18.

16.     On 12/24/18, he sustained a fall, went sent to the emergency room as a result of the fall, and never returned to Dyer.

17.     The above mentioned fall, as well as other incidents, acts, or events were reported to Scottsdale during the policy term.

18.     On 2/23/19, Dyer submitted to Scottsdale the following email reporting for Charles Anderson:

> **Attached are Dyer's Dec 2018 reports. These are sorted by resident names - the event or incident is described for each reporting, as well as date and time. The witness/person with most info is listed as creator. If any additional info is needed, please reach out.**
>
> **Please note that <u>these should be considered incidents only, and not set up as claims</u>. However, to be kept on file in the event that this incident should develop into a claim in the future to trigger coverage.**

The attachment (Event Report Summary) contained the following reporting specific to Charles Anderson:

> **Resident Name: ANDERSON, CHARLES**
>
> **Discharge-Return Not Anticipated**
>
> **Date/Time: 12/24/2018 08:38PM**
>
> **Event Type: Fall Event/(Head to Toe)  Full Body & Pain**

4

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

**Description:** Fall in room

**Creator:** Annitra Middlebrooks, LPN

**Notifications:**
**Physician Notified:** Yes. 12/24/2018 07:53PM
**Family Notified:** Yes. 12/24/2018 08:04PM
**Care Plan Reviewed:** Yes.  12/28/2018 02:39PM

**Evaluation:** resident in hospital.

19.    The 2/23/19 email attachment also contained the following reporting for Charles
Anderson:

**Resident Name: ANDERSON, CHARLES**

**Date/Time: 12/16/2018 05:15AM**

**Event Type: Skin Tear/Laceration**

**Description: Skin tear to RFA 1 cm x3 cm**

**Creator: Patricia Pelot RN**

**Notifications:**
**Physician Notified: Yes. 12/16/2018 08:40AM**
**Family Notified: Yes. 12/16/2018 08:45AM**
**Care Plan Reviewed: No.**

**Evaluation: resident in hospital.**

20.    Exhibit 2 is a true and correct copy of the 2/23/19 notice set forth in paragraphs
18 & 19 above (redacted to only include Charles Anderson's reporting).

21.    On 2/23/19, Dyer submitted to Scottsdale the following email reporting for Charles
Anderson:

**Attached are Dyer's Nov 2018 reports. These are sorted by resident
names - the event or incident is described for each reporting, as well as
date and time. The witness/person with most info is listed as creator. If
any additional info is needed, please reach out.**

5

EXHIBIT 1

**Please note that <u>these should be considered incidents only, and not set up as claims</u>. However, to be kept on file in the event that this incident should develop into a claim in the future to trigger coverage.**

The attachment contained the following reporting specific to Charles Anderson:

<u>Resident Name</u>: **ANDERSON, CHARLES**

<u>Date/Time</u>: **11/25/2018 05:44PM**

<u>Event Type</u>: **Skin Tear/Laceration**

<u>Description</u>: **Skin Tear x2 R shin**

<u>Creator</u>: **Camille Blackburn, RN**

<u>Notifications</u>:
<u>Physician Notified</u>: **Yes. 11/25/2018 05:52PM**
<u>Family Notified</u>: **Yes. 11/25/2018 05:52PM**
<u>Care Plan Reviewed</u>: **Yes. 11/26/2018 11:09AM**

22.     The 2/23/19 email attachment also contained the following reporting for Charles

Anderson:

<u>Resident Name</u>: **ANDERSON, CHARLES**

<u>Date/Time</u>: **11/05/2018 09:45AM**

<u>Event Type</u>: **Bruise**

<u>Description</u>: **Red Bruise to right thumb and right inner arm**

<u>Creator</u>: **Latoya King, LPN**

<u>Notifications</u>:
<u>Physician Notified</u>: **Yes. 11/05/2018 10:05AM**
<u>Family Notified</u>: **Yes. 11/05/2018 10:15AM**
<u>Care Plan Reviewed</u>: **Yes. 11/05/2018 02:25PM**

23.     Exhibit 3 is a true and correct copy of the 2/23/19 notice set forth in paragraphs 21

& 22 above (redacted to only include Charles Anderson's reporting).

6

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

24.    On 2/23/19, Dyer submitted to Scottsdale the following email reporting for Charles

Anderson:

> **Attached are Dyer's June 2018 reports. These are sorted by resident names - the event or incident is described for each reporting, as well as date and time. The witness/person with most info is listed as creator. If any additional info is needed, please reach out.**
>
> **Please note that <u>these should be considered incidents only, and not set up as claims</u>. However, to be kept on file in the event that this incident should develop into a claim in the future to trigger coverage.**

The attachment contained the following reporting specific to Charles Anderson:

> <u>**Resident Name**</u>**: ANDERSON, CHARLES**
>
> <u>**Date/Time**</u>**: 06/25/2018 08:10AM**
>
> <u>**Event Type**</u>**: Skin Tear/Laceration**
>
> <u>**Description**</u>**: Skin Tear to the left knee**
>
> <u>**Creator**</u>**: LaToya King, LPN**
>
> <u>**Notifications**</u>**:**
> <u>**Physician Notified**</u>**: Yes. 06/25/2018 08:45AM**
> <u>**Family Notified**</u>**: Yes. 06/25/2018 09:11AM**
> <u>**Care Plan Reviewed**</u>**: Yes. 06/26/2018 01:27AM**

25.    The 2/23/19 email attachment also contained the following reporting for Charles

Anderson:

> <u>**Resident Name**</u>**: ANDERSON, CHARLES**
>
> <u>**Date/Time**</u>**: 06/03/2018 11:00AM**
>
> <u>**Event Type**</u>**: Skin Tear/Laceration**
>
> <u>**Description**</u>**: scratch**
>
> <u>**Creator**</u>**: Nia Johnson, LPN**
>
> <u>**Notifications**</u>**:**

7

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

FILED DATE: 6/3/2020 12:37 PM    2020CH04433

**Physician Notified:** Yes. 06/03/2018 11:15AM
**Family Notified:** Yes. 06/03/2018 11:20AM
**Care Plan Reviewed:** No.

26.     Exhibit 4 is a true and correct copy of the 2/23/19 notice set forth in paragraphs 24

& 25 above (redacted to only include Charles Anderson's reporting).

27.     Scottsdale received Exhibits 2, 3, and 4 on 2/23/19.

## Charles Anderson Lawsuit

28.     On March 23, 2020, Plaintiffs received notice for the first time that Charles

Anderson had filed a lawsuit suit against Dyer, alleging that during the course of his residency he

sustained injury and poor care. Attached as Exhibit 5 is a true and correct copy of the Proposed

Lawsuit.

## Scottsdale Denial

29.     On that same date, 3/23/2020, Plaintiffs submitted the lawsuit to Scottsdale to

defense and indemnification.

30.     On April 3, 2020, Scottsdale denied indemnification and defense, via a denial letter

"Denial"). Exhibit 6 is a true and correct copy of the Denial.

31.     The basis of the Denial is Scottsdale alleges no reporting of an incident, act,

injury or damage occurrence prior to the policy expiration period.

32.     The Policy calls for Scottsdale to provide both a defense and indemnification for

covered claims.

33.     Specifically, the policy states (Exhibit 1, page 5):

### SECTION I—COVERAGE AGREEMENTS

**A. Insuring Agreement**
We will pay up to the applicable Limit of Liability set forth in **Item 3.** of the Declarations
on behalf of the "insured" any "damages" that the "insured" becomes legally obligated
to pay as a result of a "claim" arising out of an "incident" happening on or after the

8

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

retroactive date shown in the Declarations and before the end of the "policy period"
provided that:
1. Such "claim" is first made against the "insured" during the "policy period";

2. The "claim" is reported to us in accordance with the provisions of **SECTION VI** of
this coverage
form; and

3. Prior to the effective date of this Policy:
**a.** No "notice manager" knew or should have known of a "claim" or a potential "claim";
**b.** No "insured" had given notice to a prior insurer of a "claim," "related claim" or
potential
"claim"; or
**c.** No "insured" had given notice to a prior insurer of an "incident" or any "related
incident."

**B. Defense and Supplemental Payments**
We have the right and duty to defend any "claim" that is covered by this Policy, even if
any allegations of such "claim" are groundless, false or fraudulent. We shall have the
right to appoint counsel and to make such investigation, defense and settlement of a
"claim" as is deemed necessary by us. If a "claim" is submitted to arbitration or
mediation, we shall be entitled to exercise all of the "insured's" rights in the choice of
arbitrators or mediators and in the conduct of an arbitration or mediation proceeding.

34.     Scottsdale has denied both a defense and indemnification to Dyer in violation of

the clear Policy terms.

35.     Plaintiffs are injured in having to pay for an attorney to defend them.

36.     Plaintiffs are injured in having to pay a verdict/settlement.

Wherefore Plaintiffs pray this Honorable Court find that Scottsdale owes Plaintiff a

defense and indemnification in the Charles Anderson lawsuit, and any other relief deemed just

and proper.

### Count II – Breach of Contract

37. – 72.     Plaintiffs adopt and re-allege paragraphs 1 to 36 as set forth in Count I

above.

Wherefore Plaintiffs pray this Honorable Court find that Scottsdale breached their contract,

that Defendant owes a defense and indemnification in the Charles Anderson lawsuit, and any other

relief deemed just and proper.

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

Respectfully submitted,

Holly Turner, #48493
Attorney for Defendant
2201 Main Street
Evanston, IL 60601
(708) 476-4813
hturner@extendedcarellc.com

10

EXHIBIT 1

Return Date: No return date scheduled
Hearing Date: 10/1/2020 9:30 AM - 9:30 AM
Courtroom Number: 2305
Location: District 1 Court
    Cook County, IL

**SCOTTSDALE INSURANCE COMPANY®**
Home Office: One Nationwide Plaza
Columbus, Ohio 43215
Administrative Office:
8877 North Gainey Center Drive • Scottsdale, Arizona 85258
1-800-423-7675
A STOCK COMPANY

FILED
6/3/2020 12:37 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH04433

9382931

FILED DATE: 6/3/2020 12:37 PM 2020CH04433

## SENIOR CARE LIABILITY DECLARATIONS

### PLEASE REVIEW THE POLICY CAREFULLY.

**NOTICE: EXCEPT AS MAY BE OTHERWISE PROVIDED HEREIN, THIS IS A CLAIMS MADE AND REPORTED POLI-
CY. THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILITY FOR COVERED ACTS COMMITTED SUBSE-
QUENT TO THE RETROACTIVE DATE, IF APPLICABLE, FOR WHICH CLAIMS ARE FIRST MADE AGAINST YOU
WHILE THE POLICY IS IN FORCE AND WHICH ARE REPORTED TO US IN ACCORDANCE WITH THE TERMS OF
THE POLICY.**

**Policy Number:** ___SHS0000061___

| Item 1. First Named Insured and Mailing Address: | Broker Name and Mailing Address: |
|---|---|
| Major Hospital DBA SM Healthcare, LLC | Sara Johnson |
| 101 W 87th Avenue | Worthy Insurance Group, LLC |
| Merrillville, IN 46410 | |
| | |
| | |

**Additional Named Insureds:** See form SHS-37 (9-17) Named Insured Schedule

**Form of Business:** CORPORATION

**Item 2. Policy Period: From: (a)** ___03/01/2018___ **to (b)** ___03/01/2019___

    12:01 A.M. standard time at the address shown in **Item 1.** above.

**Item 3. Aggregate Limit of Liability all Insured Locations: $** ___6,000,000___

**Item 4.**

| Coverage | Each Claim Limit | Aggregate Limit | Deductible/ Self-Insured Retention | Policy Basis (Per Claim/ Occurrence) | Retroactive Date |
|---|---|---|---|---|---|
| **A. Professional Liability** | $400,000 | $2,000,000 | See SHS-6 | | See SHS-37 |
|    Sub-Limits | | | | | |
|    **I.** Damage to Resident Property | $2,500 | $10,000 | | | |
|    **II.** SuperBug Clean Up | $25,000 | $25,000 | $5,000 | | |
|    **III.** Evacuation Expense | $50,000 | $50,000 | | | |
|    **IV.** HIPAA Coverage | | $25,000 | | | |
|    **V.** Crisis Costs | | $25,000 | | | |
| **B. General Liability** | | | | | |
| Per Claim/Occurrence | $1,000,000 | $3,000,000 | See SHS-6 | | See SHS-37 |
|    Products-Completed Operations Aggregate | | $3,000,000 | | | |
|    Damage to Premises Rented by You | | $1,000,000 | | | |
|    Personal and Advertising Injury Liability | | $1,000,000 | | | |

SHS-D-1 (6-17)

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM 2020CH04433

| | | $10,000 | | | |
|---|---|---|---|---|---|
| Medical Expense | | | | | |
| **C. Employee Benefits Liability** | $1,000,000 | $3,000,000 | $1,000 | | See SHS-37 |
| **D. Stop Gap Liability** | N/A | N/A | | | |
| **E. Hired and Non-Owned Auto** | Included | Included | | | |

**Item 5. Premium**

    **Policy Premium:**  $561,529        Indiana Patient Compensation Fund: $27,746.80
    **Inspection Fee:**  $14,750
    **State Tax:**  $14,406.98
    **Stamping Fee:**
    **Amount Due:**

**Item 6. Extended Reporting Period Premium:**
To be determined at time of purchase

**Item 7. Claim Notices:**

Nationwide Management Liability & Specialty
Attention: Claims Manager
7 World Trade Center, 37th Floor
250 Greenwich Street
New York, NY 10007-0033
Telephone: (800) 423-7675
E-mail: mlsreportaloss@nationwide.com

**Item 8. All Other Notices:**

Nationwide Management Liability & Specialty
Attention: Claims Manager
7 World Trade Center, 37th Floor
250 Greenwich Street
New York, NY 10007-0033
Telephone: (800) 423-7675
E-mail: mlsreportaloss@nationwide.com

**Item 9. Insured Locations:**
See form SHS-38 9-17

**Item 10. Schedule of Forms and Endorsements Made a Part of this Policy:**

UTS-COVPG 1-16  Cover Page
SHS-P-1 6-17  PROFESSIONAL LIABILITY CLAIMS MADE
SHS-P-2 6-17  COMMERCIAL GENERAL LIABILITY COVERAGE FORM - CLAIMS MADE
SHS-1 6-17  COMMON CONDITIONS
SHS-2 6-17  SENIOR CARE ENHANCEMENT ENDORSEMENT
SHS-5 6-17  ADDITIONAL INSURED | BLANKET ADDITIONAL INSURED ENDORSEMENT
SHS-7 6-17  MINIMUM EARNED PREMIUM ENDORSEMENT
SHS-8 6-17  EMPLOYEE BENEFITS LIABILITY COVERAGE
SHS-9 6-17  HIRED & NON-OWNED AUTO LIABILITY CLAIMS MADE
SHS-14 6-17  GL EXCLUSION SERVICES FURNISHED BY HEALTH CARE PROVIDERS
SHS-15 6-17  FUNGI/BACTERIA EXCLUSION
SHS-16 6-17  ABUSE/MOLESTATION EXCLUSION GL ONLY
SHS-17 6-17  CONTRACTUAL LIABILITY LIMITATION
SHS-29 6-17  EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM (REJECT)
SHS-32 6-17  EXCLUSION OF CERTIFIED ACTS OF TERRORISM (REJECT)
SHS-37 9-17  NAMED INSURED SCHEDULE
SHS-38 9-17  SCHEDULE OF PREMISES
SHS-3 6-17  AGGREGATE LIMIT PER LOCATION AND MAXIMUM AGGREGATE LIMIT ENDORSEMENT
SHS-6 6-17  SELF-INSURED RETENTION LIABILITY INSURANCE ENDORSEMENT

*Also review endorsements attached or deleted subsequently to determine complete policy.*

EXHIBIT 1

**IN CONSIDERATION OF THE PAYMENT OF THE PREMIUMS, AND SUBJECT TO ALL THE TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY, WE AGREE TO PROVIDE THE INSURED WITH THE INSURANCE AS STATED IN THIS POLICY.**

**THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE REFERENCED POLICY.**

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

SHS-D-1 (6-17)                    Page 3 of 3

EXHIBIT 1



FILED DATE: 6/3/2020 12:37 PM 2020CH04433

Underwritten by: Scottsdale Insurance Company
Home Office: One Nationwide Plaza ▪ Columbus, Ohio 43215
Administrative Office: 8877 North Gainey Center Drive ▪ Scottsdale, Arizona 85258
1-800-423-7675▪ A Stock Company

In Witness Whereof, the Company has caused this policy to be executed and attested.

Secretary

President

The information contained herein replaces any similar information contained elsewhere in the policy.

UTS-COVPG (1-16)

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

Underwritten by: Scottsdale Insurance Company
Home Office: One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office: 8877 North Gainey Center Drive • Scottsdale, Arizona 85258
1-800-423-7675 • A Stock Company

## SENIOR CARE PROFESSIONAL LIABILITY COVERAGE FORM—CLAIMS MADE

VARIOUS PROVISIONS IN THIS POLICY RESTRICT COVERAGE. PORTIONS OF THIS POLICY AP-
PLY ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO US DURING THE
POLICY PERIOD OR APPLICABLE EXTENDED REPORTING PERIOD. PLEASE READ THIS POLICY
CAREFULLY.

In consideration of the payment of the premium and in reliance upon all statements made and information
furnished to us, and subject to all of the terms and conditions of this Policy (including all endorsements
attached hereto), you and we agree as follows:

Throughout this document, the words "you" and "your" refer strictly to the "named insured" shown in the
Declarations and any other person or organization qualifying as a "named insured." The words "we," "us"
and "our" refer to the Insurer providing this coverage.

The word "insured" means any person or organization qualifying as such under Who Is An Insured.

With respect to the coverage provided by this Policy, the words "claim," "claims" and "damages" whether
appearing in quotation marks or not, shall have the special meanings described in Definitions.

Other words and phrases that appear in quotation marks have special meaning. Refer to both Definitions
of the Commercial General Liability Coverage Form, and the other definitions provided herein which are
unique and specific to this coverage part.

### SECTION I—COVERAGE AGREEMENTS

#### A. Insuring Agreement

We will pay up to the applicable Limit of Liability set forth in **Item 3.** of the Declarations on behalf
of the "insured" any "damages" that the "insured" becomes legally obligated to pay as a result of
a "claim" arising out of an "incident" happening on or after the retroactive date shown in the Dec-
larations and before the end of the "policy period" provided that:

**1.** Such "claim" is first made against the "insured" during the "policy period";

**2.** The "claim" is reported to us in accordance with the provisions of **SECTION VI** of this cover-
age form; and

**3.** Prior to the effective date of this Policy:

**a.** No "notice manager" knew or should have known of a "claim" or a potential "claim";

**b.** No "insured" had given notice to a prior insurer of a "claim," "related claim" or potential
"claim"; or

**c.** No "insured" had given notice to a prior insurer of an "incident" or any "related incident."

#### B. Defense and Supplemental Payments

We have the right and duty to defend any "claim" that is covered by this Policy, even if any alle-
gations of such "claim" are groundless, false or fraudulent. We shall have the right to appoint
counsel and to make such investigation, defense and settlement of a "claim" as is deemed nec-
essary by us. If a "claim" is submitted to arbitration or mediation, we shall be entitled to exercise
all of the "insured's" rights in the choice of arbitrators or mediators and in the conduct of an arbi-
tration or mediation proceeding.

Nationwide

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM  2020CH04433

We are not obligated to investigate, defend, pay or settle, or continue to investigate, defend, pay or settle a "claim" after the applicable limit of our liability has been exhausted. In such case, we shall have the right to withdraw from the further investigation, defense, or settlement of such "claim."

In addition to the Limits of Liability, we will pay:

1.  Any:

    a.  Fees charged by an attorney we designate; and

    b.  All other reasonable fees, costs and expenses, which result from the investigation, adjustment, defense and appeal of a "claim."

    These expenses must be incurred by us or by you with our prior written consent.

2.  Any premiums for appeal bonds or to release property that is being used to secure a legal obligation. We shall pay premium for bonds valued up to the Limits of Liability. We have no obligation to apply for or furnish such bonds.

3.  "Prejudgment interest and post-judgment interest" that is awarded in connection with a judgment made against the "insured," or that portion of the judgment that is within the applicable Limits of Liability. If we make an offer to pay the applicable Limit of Liability, we will not pay any "prejudgment interest and post-judgment interest" based on that period of time after the offer.

4.  All reasonable expenses incurred by the "insured" at our request to assist us in the investigation or defense of the "claim." This includes actual loss of earnings up to five hundred dollars ($500) per day, because of time off from work.

5.  Up to the "disciplinary proceedings" Limit of Liability in the amount of $25,000 in the aggregate for attorney fees charged by an attorney selected by us and for other reasonable costs, expenses or fees paid to third parties incurred as a result of "disciplinary proceedings" arising out of the performance of "professional services" by an "insured" provided that:

    a.  The "named insured" consents to the coverage for the "insured" who is subject to such proceeding;

    b.  Notice of such proceeding is first received by you during the "policy period"; and

    c.  Notice of such proceeding is reported to us in writing within thirty (30) days of the "notice manager" receipt of such notice.

    The "disciplinary proceedings" Limit of Liability set forth in above is our maximum Limit of Liability for all covered "disciplinary proceedings" regardless of the number of persons and organizations who are "insureds," the number of "disciplinary proceedings," or the number of persons or entities making or bringing complaints that are the subject of such proceedings.

    Payments made under the "disciplinary proceedings" Limit of Liability set above, are supplemental payments, and are in addition to the Limits of Liability set forth on the Declarations.

    Notwithstanding any terms and conditions of the Policy or any endorsement thereto to the contrary, any supplemental payments for "disciplinary proceedings" made hereunder are not subject to the Policy deductible, if any.

## SECTION II—DEFINITIONS

Whether set forth in quotation marks or not in this document, the following words or phrases, whether used in the singular or plural, shall have the meanings specified below:

A.  "Administrator" means any long-term care facility administrator, or the medical director in their performance of "long-term care administrative services."

Nationwide®

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

**B.** "Automobile" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.

**C.** "Application" means all signed applications for this Policy and for any policy in an uninterrupted series of policies issued by us of which this Policy is a renewal or replacement. "Application" includes any materials submitted or required to be submitted.

**D.** "Beauticians and barbers services" means those services rendered by licensed beauticians and barbers in their capacity as such and only while performing such services at an "insured location."

**E.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these. "Bodily injury" also includes mental injury or mental anguish sustained by a person at any time if such mental injury or mental anguish results as a consequence of such bodily injury, sickness or disease.

**F.** "Claim" means:

    **1.** A demand for "damages";

    **2.** A civil proceeding; or

    **3.** An arbitration or other alternative dispute resolution in which "damages" are alleged against an "insured" as a result of injury to which this insurance applies.

**G.** "Claim expenses" means the amounts specified in **SECTION I.B. Defense and Supplemental Payments,** paragraphs **1-4.**

**H.** "Damages" mean judgments, awards and settlements (provided any settlement is made with our prior written consent) including punitive or exemplary damages if insurable under the applicable law most favorable to the "insured" that an "insured" is legally obligated to pay on account of a covered "claim." "Damages" do not include:

    **1.** The return or restitution of fees, expenses or costs;

    **2.** Civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to law, statute, regulation or court rule;

    **3.** Injunctive or declaratory relief;

    **4.** Any amount that is not insurable under any applicable law;

    **5.** The multiplied portion or any multiplied award; or

    **6.** Plaintiff's attorney's fees associated with any of the above.

**I.** "Disciplinary proceeding" means any pending matter, including an initial inquiry, before a state or federal licensing board to investigate charges alleging a violation of any rule of professional conduct in the performance of "professional services." "Disciplinary proceedings" do not include any complaint or proceeding instituted against an "insured" by the Department of Health and Human Services or its designee relative to a failure to comply with the Health Insurance Portability and Accountability Act.

**J.** "Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from, computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**K.** "Emergency medical treatment" means emergency medical treatment provided by a physician, without remuneration, at an "insured location" for your "resident" suffering from a life threatening condition.



EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM    2020CH04433

**L.** "Employee" means a person whose work you engaged and directed, including your students, "temporary workers" and "volunteers." An "employee" includes leased or loaned "employees." An independent contractor is not an "employee."

**M.** "First named insured" means the natural person or entity first listed as a "named insured" in the Declarations.

**N.** "Formal review board" means the "named insured's" official boards or committees formed for the purpose of evaluating the qualifications or performance of the "named insured's" staff; or evaluating, maintaining and ensuring the quality of "professional services" being provided by or on behalf of the "named insured."

**O.** "Healthcare services" means services performed by the "insured" to care for or assist your "residents," provided such "insured" is licensed, trained or qualified to perform such services in the jurisdiction in which such services are rendered.

**P.** "Incident" means an act, error or omission in the providing of "professional services."

**Q.** "Insured contract" means:

   **1.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire, explosion, smoke or leaks from automatic fire protective systems to premises while rented to the "named insured" or temporarily occupied by the "named insured" with permission of the owner is not an "insured contract";

   **2.** A sidetrack agreement;

   **3.** Any easement or license agreement, except in connection with construction or demolition operations on or within fifty (50) feet of a railroad;

   **4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **5.** An elevator maintenance agreement; or

   **6.** That part of any other contract or agreement pertaining to the "named insured's" business (including an indemnification of a municipality in connection with work performed for a municipality) under which the "named insured" assumes the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   However, paragraph **6.** does not include that part of any contract or agreement:

   **a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within fifty (50) feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

   **b.** That indemnifies an architect, engineer or surveyor for "bodily injury" or "property damage" arising out of:

      **(1)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      **(2)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   **c.** Under which the "insured," if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the "insured's" rendering or failure to render professional services, including those listed in paragraph **b.** above and supervisory, inspection, architectural or engineering activities.

Nationwide

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM    2020CH04433

**R.** "Insured location" means the location of each of you as specified on the Declaration or additional locations where you render "professional services" as may be specified by endorsement.

**S.** "Loading or unloading" means the handling of property:

    **1.** After it is moved from the place where it is accepted for movement into or onto the aircraft, watercraft, or "automobile";

    **2.** While it is in or on an aircraft, watercraft or "automobile"; or

    **3.** While it is being moved from an aircraft, watercraft or "automobile" to the place where it is finally delivered;

**T.** "Long-term care administrative services" means the development of clinical policies, procedures and protocols that govern the rendering of "healthcare services" by the "insured." "Long-term care administrative services" include services as a member of a "formal review board." "Long-term care administrative services" do not include "healthcare services."

**U.** "Named insured" means the natural person or entity named as such on the Declarations and any endorsement to the Policy.

**V.** "Notice manager" means any executive officer, member of your human resources, risk management or in-house general counsel's office, or any "employee" authorized by the "named insured" to give or receive notice of a "claim" or a potential "claim."

**W.** "Personal and advertising injury" shall have the same meaning as is set forth in the Commercial General Liability Coverage Part of this Policy.

**X.** "Policy period" means the period from the effective date of this Policy shown in the Declarations to the expiration date of the Policy shown in the Declarations or an earlier cancellation date of this Policy.

**Y.** "Pollutants" means any substance exhibiting hazardous characteristics as is or may be defined or identified on any list of hazardous substances issued by the United States Environmental Protection Agency or any state, local or foreign counterpart. "Pollutants" also means, without limitation, any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste (including materials to be recycled, reconditioned or reclaimed), as well as any air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos, or asbestos products or any noise.

**Z.** "Professional services" means:

    **1.** The performance of:

        **a.** "Long-term care administrative services";

        **b.** "Healthcare services"; or

        **c.** "Beauticians and barbers services"; or

    **2.** Violation of the "rights of residents."

"Professional services" do not include medical treatment or "healthcare services" performed by any person in their capacity as an intern, medical resident, physician, surgeon, dentist, psychiatrist, podiatrist, chiropractor or physicians' assistant, except for "emergency medical treatment." This shall not apply to the "named insured" for its vicarious liability arising out of the medical treatment or "healthcare services" performed for your "residents" by any healthcare provider listed above.

**AA.** "Property damage" means:

    **1.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**Nationwide®**

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

2.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "incident" that caused it.

**BB.** "Related incident's" mean all "incident's" that are, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision.

**CC.** "Related claims" mean all "claims" arising out of a single "incident" or arising out of "related incident's."

**DD.** "Resident" means a person who is or was being cared for at your "insured location."

**EE.** "Rights of residents" means any right granted to a "resident" under the Nursing Home Quality Reform Act of 1987, any federal regulations promulgated pursuant to such law, including 42 C.F.R. 483.10, or any similar state law or regulation governing the care of such "residents," but solely to the extent that such law or regulation provides a private right of action to such "resident."

**FF.** "Temporary worker" means a worker who is furnished to the "named insured" to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**GG.** "Volunteer" means a person who is not paid any compensation by the "named insured" or anyone else for their work performed for the "named insured" and acts at the direction of and within the scope of duties determined by the "named insured."

## SECTION III—EXCLUSIONS

We will not defend any "claim" for, or pay any "damages" or "claim expenses," based on, arising out of or related to:

**A.** Any actual or alleged "property damage";

**B.** "Personal and advertising injury," unless the "claim" arises out of an "insured's" "professional services";

**C.** Any obligation of yours under a workers' compensation, disability benefits or unemployment compensation law or any similar law;

**D.** A "incident" or "claim" which was the subject of any notice given under any professional liability or similar policy of insurance or plan or program of self-insurance, with respect to any "claim" otherwise covered under this Policy; in effect prior to the effective date shown in the Declarations;

**E.** Any intentionally wrongful, dishonest, fraudulent, malicious, or criminal conduct committed by an "insured" or at an "insured's" direction or with an "insured's" prior knowledge. However, this exclusion does not apply to the extent liability is imposed upon the "insured" for intentionally wrongful, dishonest, fraudulent, malicious or criminal conduct of another committed without the knowledge or consent of such "insured." We will defend "claims" applicable to this exclusion until admission of guilt or final adjudication in the underlying matter. If any "insured" committed the conduct specified in this exclusion, we may ask such natural person "insured" to reimburse us for any defense costs advanced to the "insured." There is no coverage under this Policy and we will not defend any criminal complaint or proceeding regardless of the allegations made against any "insured";

**F.** Any actual, alleged or threatened discharge, release, escape, or disposal of, or exposure to, "pollutants"; any request, direction or order that any of the "insured's" test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effect of "pollutants," or any voluntary decision to do so; or any actual or alleged "property damage," or "bodily injury," of any person, or financial loss to "you";

**G.** Your alleged liability under any oral or written contract or the liability of others you assume under any oral or written contract except:



EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

1. That coverage otherwise available to an "insured" shall apply to an "insured's" liability that exists in the absence of such contract; or

2. Liability assumed under an "insured contract";

H. Discrimination of any kind on any basis, including, but not limited to, discrimination, limitation, segregation or classification based on race, sex, marital status, physical or mental handicaps, age, sexual preference, pregnancy, religion or other status that is protected under any applicable federal, state or local statute or ordinance;

I. The ownership, maintenance, use or entrustment to others of any aircraft, "automobile" or watercraft owned or operated by or rented or loaned to the "insured." Use includes operation and "loading or unloading";

J. Refusal to employ, termination of employment, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, or other practices or policies related to employment. This exclusion does not apply to any "claim" based on or arising out of services as a member of a "formal review board";

K. Liability of any individual or entity acting as an independent contractor for you; except this will not apply to:

1. Any independent contractor while acting within the scope and capacity of their duties as the medical director for the "named insured"; or

2. Any "claim" otherwise covered under this Policy for your vicarious liability with regard to such independent contractor;

L. Medical treatment or "healthcare services" performed by an intern, medical resident, physician, surgeon, dentist, podiatrist, psychiatrist, chiropractor or physicians' assistant. This exclusion will not apply to:

1. "Emergency medical treatment"; or

2. Your vicarious liability arising out of "healthcare services" performed for your "residents" by any healthcare provider listed above;

M. Any actual or alleged violation of:

1. The Telephone Consumer Protection Act (TCPA);

2. The CAN-SPAM Act of 2003;

3. The Fair Credit Reporting Act (FCRA) and the Fair and Accurate Credit Transaction Act (FACTA);

4. Any statute, ordinance, regulation or law that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information; or

5. Any statute, ordinance, regulation or law which prohibits or limits the conversion or consumption of another's tangible property or electronic assets. For the purpose of this provision, electronic assets include, but are not limited to, minute allowances, text message allowances and other electronic consumables;

N. Any "claim" brought by or on behalf of any federal, state or local government agency including, but not limited to, any "claim" alleging healthcare fraud or abuse;

O. Any actual or alleged violation of "rights of residents" brought by any person other than a "resident" or a "resident's" legal representative;



SHS-P-1 (6-17)                                     Page 7 of 9

EXHIBIT 1

**P.** Any:

  **1.** Actual or alleged access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

  **2.** The actual or alleged loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data." This exclusion applies even if "damages" are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by the "insured" or others arising out of that which is described in paragraph **1.** or **2.** above; or

**Q.** "Personal and advertising injury."

## SECTION IV—WHO IS AN INSURED

**A.** "You" are an "insured." In addition, the persons described below are "insureds":

  **1.** Your past or present "employee" or "administrator," but solely with respect to "professional services" performed on the "named insured's" behalf at the time of their affiliation with you;

  **2.** Beauticians and barbers who are not your "employees," but who are invited onto an "insured location" by you to perform "beauticians and barbers services" and only while performing "beauticians and barbers services" at the "insured location" for you; or

  **3.** "Named insureds."

## SECTION V—LIMITS OF LIABILITY

**A. Limit of Liability—each "claim"**

Subject to paragraph **B.** below, our Limit of Liability for "damages" for each "claim" shall not exceed the amount stated in the Declarations for each "claim."

**B. Limit of Liability—"disciplinary proceeding"**

Our Limit of Liability for "disciplinary proceedings" is the amount set forth in **SECTION I.B. Defense and Supplemental Payments.**

**C. Limit of Liability—in the aggregate**

Our Limit of Liability for "damages" for all "claims" shall not exceed the amount stated in the Declarations as the "aggregate."

  **1. Multiple "insureds," "claims" and claimants**

  The Limits of Liability shown in the Declarations and subject to the provisions of this Policy is the amount the Insurer will pay as "damages" and "claim expenses" regardless of the number of "insureds," "claims" made or persons or entities making "claims." All "insureds" under this Policy share the Limits of Liability. In no event will the number of "insureds" involved in a "claim" or "related claims" increase the applicable Limit of Liability.

  **2. "Related claims"**

  If "related claims" are subsequently made against the "insured" and reported to the Insurer, all such "related claims," whenever made, shall be considered a single "claim" first made and reported to the Insurer within the "policy period" in which the earliest of the "related claims" was first made and reported to us.

Nationwide

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM 2020CH04433

**3. Deductible or Self-Insured Retention**

The "insured" is responsible for payment in full of the any deductible or self-insured retention stated in the Declarations. Our obligation to pay "damages" or defense costs under this Policy shall be excess of such deductible or self-insured retention. The deductible or self-insured retention will apply to each "claim" or "related claims" (subject to the applicable aggregate deductible or self-insured retention, if any), and will be eroded (or exhausted) by the "insured's" payment of "damages" or defense costs. We shall have no obligation whatsoever to pay all or any portion of the deductible or self-insured retention on behalf of the "insured." We will have, at our sole discretion, the right and option to do so, in which event the "insured" will repay us any amounts paid.

**G.** If a Deductible is selected in the Declarations, any amounts paid within such deductible will reduce, and may exhaust, the applicable Limits of Liability set forth in the Declarations.

**H.** If a Self-Insured Retention is selected under any Insuring Agreement in the Declarations, any amounts paid within such self-insured retention will not reduce the applicable Limits of Liability set forth in the Declarations.

## SECTION VI—NOTICE OF CLAIMS AND POTENTIAL CLAIMS

### A. Notice of Claims

If during the "policy period" any "claim" for an "incident" is first made against the "insured," as a condition precedent to the obligations of the Insurer under this Policy, the "notice manager" must, give us written notice of such "claim" as soon as practicable thereafter, but in no event later than:

**1.** Sixty (60) days after the end of the "policy period" or earlier cancellation date of this Policy; or

**2.** The expiration of any "extended reporting period."

### B. Notice of Potential Claims

If during the "policy period" any "notice manager" first becomes aware of potential "claim" against the "insured" and gives written notice during the "policy period" to us of such potential "claim," and the reasons for anticipating a "claim," with full particulars, including, but not limited to:

**1.** The specific "incident", act, error or omission, or the specific injury or damage, occurrence or offense;

**2.** The dates and persons involved;

**3.** The identity of anticipated or possible claimants; and

**4.** The circumstances by which the "insured" became aware of the potential "claim";

then any "claim," whenever made, that arises out of such reported potential "claim" shall be deemed to have been made at the time such written notice of the potential "claim" was first given to us.

### C. When A Claim is Made

Except as set forth in paragraph **B. Notice of Potential Claims,** a "claim" will be deemed first made at the earliest of the following times:

**1.** When any "notice manager" first receives a written or oral demand; or

**2.** When any "notice manager" is first served with a suit, notice of a civil proceeding, arbitration proceeding or other alternative dispute resolution proceeding.



EXHIBIT 1

Underwritten by: Scottsdale Insurance Company
Home Office: One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office: 8877 North Gainey Center Drive • Scottsdale, Arizona 85258
1-800-423-7675 • A Stock Company

## SENIOR CARE LIABILITY POLICY
## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**COVERAGES A AND B PROVIDE CLAIMS-MADE COVERAGE. PLEASE READ THE ENTIRE FORM CAREFULLY.**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II—WHO IS AN INSURED.**

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION VI—DEFINITIONS.**

**SECTION I—COVERAGES**

**COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in **SECTION III—LIMITS OF INSURANCE; and**

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments—Coverages **A** and **B.**

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

      (3) A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with paragraph **c.** below, during the policy period or any Extended Reporting Period we provide under **SECTION V—EXTENDED REPORTING PERIODS.**

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

Nationwide®

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM  2020CH04433

c. A claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

(1) When notice of such claim is received and recorded by any insured or by us, whichever comes first; or

(2) When we make settlement in accordance with paragraph **a.** above.

All claims for damages because of "bodily injury" to the same person, including damages claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury," will be deemed to have been made at the time the first of those claims is made against any insured.

All claims for damages because of "property damage" causing loss to the same person or organization will be deemed to have been made at the time the first of those claims is made against any insured.

2. **Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

This exclusion applies even if the claims against any insured allege negligence or other wrong-doing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage," involved that which is described in paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, sell-ing, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself consid-ered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of para-graph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages be-cause of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract."

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumid-ify the building, or equipment that is used to heat water for personal use by the build-ing's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations per-formed for that additional insured at that premises, site or location and such prem-ises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

 Nationwide®

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

   **(i)** Any insured; or

   **(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

   **(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

   **(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

   **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire."

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants."

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

 Nationwide

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than twenty-six (26) feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

    **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

    **(b)** The operation of any of the machinery or equipment listed in paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment."

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage," however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

Nationwide®

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

**j.   Damage To Property**

"Property damage" to:

**(1)**   Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)**   Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)**   Property loaned to you;

**(4)**   Personal property in the care, custody or control of the insured;

**(5)**   That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)**   That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in **SECTION III—LIMITS OF INSURANCE.**

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k.   Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.   Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.   Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**   A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**   A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

Nationwide®

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM 2020CH04433

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury."

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury."

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in **SECTION III—LIMITS OF INSURANCE.**

## COVERAGE B—PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and du-



EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

ty to defend the insured against any "suit" seeking those damages. However, we will have no duty to

defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

    (1) The amount we will pay for damages is limited as described in **SECTION III—LIMITS OF IN-SURANCE;** and

    (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments—Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business, but only if:

    (1) The offense was committed in the "coverage territory";

    (2) The offense was not committed before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

    (3) A claim for damages because of the "personal and advertising injury" is first made against any insured, in accordance with paragraph **c.** below, during the policy period or any Extended Reporting Period we provide under **SECTION V—EXTENDED REPORTING PERIODS.**

**c.** A claim made by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

    (1) When notice of such claim is received and recorded by any insured or by us, whichever comes first; or

    (2) When we make settlement in accordance with paragraph **a.** above.

All claims for damages because of "personal and advertising injury" to the same person or organization as a result of an offense will be deemed to have been made at the time the first of those claims is made against any insured.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the Retroactive Date, if any, shown in the Declarations.

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM 2020CH04433

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement."

**g. Quality Or Performance Of Goods—Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement."

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement."

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement."

However, this exclusion does not apply to infringement, in your "advertisement," of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012



EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

m. **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

n. **Pollution-related**

Any loss, cost or expense arising out of any:

    **(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    **(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

o. **War**

"Personal and advertising injury," however caused, arising, directly or indirectly, out of:

    **(1)** War, including undeclared or civil war;

    **(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    **(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

p. **Recording And Distribution Of Material In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

    **(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

    **(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

    **(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

    **(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**COVERAGE C—MEDICAL PAYMENTS**

**1. Insuring Agreement**

    a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

        **(1)** On premises you own or rent;

        **(2)** On ways next to premises you own or rent; or

        **(3)** Because of your operations;

        provided that:

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

Nationwide®

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

## 2. Exclusions

We will not pay expenses for "bodily injury":

### a. Any Insured

To any insured, except "volunteer workers."

### b. Hired Person

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

### c. Injury On Normally Occupied Premises

To a person injured on that part of premises you own or rent that the person normally occupies.

### d. Workers' Compensation And Similar Laws

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

### e. Athletics Activities

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

### f. Products-Completed Operations Hazard

Included within the "products-completed operations hazard."

### g. Coverage A Exclusions

Excluded under Coverage **A.**

## SUPPLEMENTARY PAYMENTS—COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to two hundred fifty dollars ($250) for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

 Nationwide

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to two hundred fifty dollars ($250) a day because of time off from work.

e. All court costs taxed against the insured in the "suit." However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit," we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit."

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses in-

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012



EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

curred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph **2.b.(2)** of **SECTION I—COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit

of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in paragraph **f.** above, are no longer met.

### SECTION II—WHO IS AN INSURED

1. If you are designated in the Declarations as:

    a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

    e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

    a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

        (1) "Bodily injury" or "personal and advertising injury":

            (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

            (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of paragraph **(a)** above;

            (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraph **(a)** or **(b)** above; or

            (d) Arising out of his or her providing or failing to provide professional health care services.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

Nationwide®

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM 2020CH04433

    **(2)** "Property damage" to property:

        **(a)** Owned, occupied or used by;

        **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

        you, any of your "employees", "volunteer workers," any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

  **b.** Any person (other than your "employee" or "volunteer worker") or any organization while acting as your real estate manager.

  **c.** Any person or organization having proper temporary custody of your property if you die, but only:

    **(1)** With respect to liability arising out of the maintenance or use of that property; and

    **(2)** Until your legal representative has been appointed.

  **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

  **a.** Coverage under this provision is afforded only until the ninetieth (90th) day after you acquire or form the organization or the end of the policy period, whichever is earlier;

  **b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

  **c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III—LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

  **a.** Insureds;

  **b.** Claims made or "suits" brought; or

  **c.** Persons or organizations making claims or bringing "suits."

**2.** The General Aggregate Limit is the most we will pay for the sum of:

  **a.** Medical expenses under Coverage **C;**

  **b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

  **c.** Damages under Coverage **B.**

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM    2020CH04433

damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

4. Subject to paragraph **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A;** and

   **b.** Medical expenses under Coverage **C;**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence."

6. Subject to paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

   The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   Notice of an "occurrence" or offense is not notice of a claim.

   **b.** If a claim is received by any insured, you must:

   **(1)** Immediately record the specifics of the claim and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim as soon as practicable.

   **c.** You and any other involved insured must:

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

Nationwide®

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or a "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

## 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

## 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in paragraph **c.** below.

**b. Excess Insurance**

(1) This insurance is excess over:

    (a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

        (i) That is effective prior to the beginning of the policy period shown in the Declarations of this insurance and applies to "bodily injury" or "property damage" on other than a claims-made basis, if:

            **i.** No Retroactive Date is shown in the Declarations of this insurance; or

            **ii.** The other insurance has a policy period which continues after the Retroactive Date shown in the Declarations of this insurance;

        (ii) That is Fire, Extended Coverage, Builders' Risk, Installation Risk or similar coverage for "your work";

        (iii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM  2020CH04433

      **(iv)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

      **(v)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of **SECTION I—COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY.**

    **(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

  **(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

  **(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    **(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    **(b)** The total of all deductible and self-insured amounts under all that other insurance.

  **(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

  **a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

  **b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

  **c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

  **a.** The statements in the Declarations are accurate and complete;

  **b.** Those statements are based upon representations you made to us; and

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than thirty (30) days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**10. Your Right To Claim And Occurrence Information**

We will provide the first Named Insured shown in the Declarations the following information relating to this and any preceding general liability claims-made Coverage Part we have issued to you during the previous three years:

a. A list or other record of each "occurrence," not previously reported to any other insurer, of which we were notified in accordance with paragraph **2.a.** of the **SECTION IV—DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT CONDITION.** We will include the date and brief description of the "occurrence" if that information was in the notice we received.

b. A summary by policy year, of payments made and amounts reserved, stated separately, under any applicable General Aggregate Limit and Products-Completed Operations Aggregate Limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

You must not disclose this information to any claimant or any claimant's representative without our consent.

If we cancel or elect not to renew this Coverage Part, we will provide such information no later than thirty (30) days before the date of policy termination. In other circumstances, we will provide this information only if we receive a written request from the first Named Insured within sixty (60) days after the end of the policy period. In this case, we will provide this information within forty-five (45) days of receipt of the request.

We compile claim and "occurrence" information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers, or others to whom this information is furnished by or on behalf of any insured. Cancellation or nonrenewal will be effective even if we inadvertently provide inaccurate information.

**SECTION V—EXTENDED REPORTING PERIODS**

**1.** We will provide one or more Extended Reporting Periods, as described below, if:

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012



SHS-P-2 (6-17)                                   Page 18 of 25

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM  2020CH04433

    **a.** This Coverage Part is canceled or not renewed; or

    **b.** We renew or replace this Coverage Part with insurance that:

        **(1)** Has a Retroactive Date later than the date shown in the Declarations of this Coverage Part; or

        **(2)** Does not apply to "bodily injury," "property damage" or "personal and advertising injury" on a claims-made basis.

**2.** Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to claims for:

    **a.** "Bodily injury" or "property damage" that occurs before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations; or

    **b.** "Personal and advertising injury" caused by an offense committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations.

Once in effect, Extended Reporting Periods may not be canceled.

**3.** A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for:

    **a.** Five years with respect to claims because of "bodily injury" and "property damage" arising out of an "occurrence" reported to us, not later than sixty (60) days after the end of the policy period, in accordance with paragraph **2.a.** of the **SECTION IV—DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT CONDITION;**

    **b.** Five years with respect to claims because of "personal and advertising injury" arising out of an offense reported to us, not later than sixty (60) days after the end of the policy period, in accordance with paragraph **2.a.** of the **SECTION IV—DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT CONDITION;** and

    **c.** Sixty (60) days with respect to claims arising from "occurrences" or offenses not previously reported to us.

The Basic Extended Reporting Period does not apply to claims that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such claims.

**4.** The Basic Extended Reporting Period does not reinstate or increase the Limits of Insurance.

**5.** A Supplemental Extended Reporting Period of unlimited duration is available, but only by an endorsement and for an extra charge. This supplemental period starts when the Basic Extended Reporting Period, set forth in paragraph **3.** above, ends.

You must give us a written request for the endorsement within sixty (60) days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

    **a.** The exposures insured;

    **b.** Previous types and amounts of insurance;

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

Nationwide®

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

   c.  Limits of Insurance available under this Coverage Part for future payment of damages; and

   d.  Other related factors.

The additional premium will not exceed two hundred percent (200%) of the annual premium for this Coverage Part.

This endorsement shall set forth the terms, not inconsistent with this section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for claims first received during such period is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

6.  If the Supplemental Extended Reporting Period is in effect, we will provide the supplemental aggregate limits of insurance described below, but only for claims first received and recorded during the Supplemental Extended Reporting Period.

The supplemental aggregate limits of insurance will be equal to the dollar amount shown in the Declarations in effect at the end of the policy period for such of the following limits of insurance for which a dollar amount has been entered:

General Aggregate Limit

Products-Completed Operations Aggregate Limit

Paragraphs **2.** and **3.** of **SECTION III—LIMITS OF INSURANCE** will be amended accordingly. The Personal and Advertising Injury Limit, the Each Occurrence Limit and the Damage To Premises Rented To You Limit shown in the Declarations will then continue to apply, as set forth in paragraphs **4., 5.** and **6.** of that section.

## SECTION VI—DEFINITIONS

1.  "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a.  Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b.  Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2.  "Auto" means:

   a.  A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   b.  Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment."

3.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4.  "Coverage territory" means:

   a.  The United States of America (including its territories and possessions), Puerto Rico and Canada;

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

Nationwide

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

    **b.**  International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in paragraph **a.** above; or

    **c.**  All other parts of the world if the injury or damage arises out of:

        **(1)**  Goods or products made or sold by you in the territory described in paragraph **a.** above;

        **(2)**  The activities of a person whose home is in the territory described in paragraph **a.** above, but is away for a short time on your business; or

        **(3)**  "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

    provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in paragraph **a.** above or in a settlement we agree to.

**5.**  "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

**6.**  "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.**  "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.**  "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

    **a.**  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.**  You have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.**  "Insured contract" means:

    **a.**  A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    **b.**  A sidetrack agreement;

    **c.**  Any easement or license agreement, except in connection with construction or demolition operations on or within fifty (50) feet of a railroad;

    **d.**  An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **e.**  An elevator maintenance agreement;

    **f.**  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph **f.** does not include that part of any contract or agreement:

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012


Nationwide

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

    **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within fifty (50) feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

    **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

        **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in paragraph **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

**11.** "Loading or unloading" means the handling of property:

    **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    **b.** While it is in or on an aircraft, watercraft or "auto"; or

    **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **b.** Vehicles maintained for use solely on or next to premises you own or rent;

    **c.** Vehicles that travel on crawler treads;

    **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **(1)** Power cranes, shovels, loaders, diggers or drills; or

        **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.** Vehicles not described in paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        **(2)** Cherry pickers and similar devices used to raise or lower workers;

    **f.** Vehicles not described in paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012



EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM    2020CH04433

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

    (a) Snow removal;

    (b) Road maintenance, but not construction or resurfacing; or

    (c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos."

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

   **a.** False arrest, detention or imprisonment;

   **b.** Malicious prosecution;

   **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

   **f.** The use of another's advertising idea in your "advertisement"; or

   **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement."

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

   **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1) Products that are still in your physical possession; or

    (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      (a) When all of the work called for in your contract has been completed.

      (b) When all of the work to be done at the job site has been completed if your contract calls

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

for work at more than one job site.

    **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

    **(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from, computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

  **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

  **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee," and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

  **a.** Means:

    **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

 Nationwide°

        

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

        **(a)** You;

        **(b)** Others trading under your name; or

        **(c)** A person or organization whose business or assets you have acquired; and

    **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

  **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

  **a.** Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    **(2)** The providing of or failure to provide warnings or instructions.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

**Nationwide**®

EXHIBIT 1

Underwritten by Scottsdale Insurance Company

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| SHS0000061 | 03/01/2018 | Major Hospital DBA SM Healthcare, LLC | 05409 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## GENERAL TERMS AND CONDITIONS

In consideration of the premium paid, it is agreed that this endorsement
modifies insurance provided under the following:

### SENIOR CARE LIABILITY POLICY

This policy provides coverage under the coverage forms designated with an "x" below. In the event that coverage is granted under more than one coverage form, the terms in quotation marks will have the meaning set forth in the applicable coverage form.

☒ Commercial General Liability

☒ Professional Liability

☒ Employee Benefit Liability

☒ Products-Completed Operations Hazard

Throughout this policy, the words "you" and "your" refer to the "named insured" shown in the Declarations, and any other person or organization qualifying as a "named insured" under this Policy. The words "we," "us" and "our" refer to the Insurer providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION XXVII—DEFINITIONS.**

**I. Terms and Conditions**

The terms and conditions of each "coverage form" apply only to that "coverage form" and shall not apply to any other "coverage form" unless specifically stated. If any provision in these Common Conditions is inconsistent or in conflict with the terms and conditions of any "coverage form," the terms and conditions of such "coverage form" shall control for purposes of that "coverage form."

**II. Your Duties as the "First Named Insured" on the Declarations**

When there is more than one of you named in the Declarations, the first of you named, on behalf of all others, will be:

**A.** authorized to make changes in the terms of this Policy with our consent;

**B.** the payee of any premiums we refund; and

**C.** responsible for:

   **1.** the payment of all premiums due;

 Nationwide

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM  2020CH04433

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

2.  keeping records of the information we need for premium computation, and sending us copies at such times as we may request; and

3.  notifying us that you want to cancel this Policy.

## III. Limits of Liability

**A.** "Claim expenses" are in addition to the Limits of Liability unless otherwise noted by endorsement to the Policy. We shall pay "claim expenses" in connection with covered "claims.

**B.** The Limits of Liability are subject to the rules set forth under each "coverage form" under the sections entitled "Limits of Liability" or Limits of Insurance. Reference to Limits of Liability and Limits of Insurance shall have the same meaning.

**C.** The Limits of Liability for each "coverage form" are subject to the Policy Aggregate Limit of Liability if, and as, specified in the Declarations. As such, each such "coverage form" Limit of Liability is a sublimit which further limits and does not increase our maximum liability for all such "coverage forms." If no Policy Aggregate Limit of Liability is set forth in the Declarations, the Limits of Liability set forth in each "coverage part" are not subject to a Policy Aggregate Limit of Liability.

## IV. Assistance and Cooperation

If there is a "claim," the "insured" must:

**A.** forward to us or our designee, copies of the papers and documents, if any, which inform the "insured" of a "claim," including but not limited to all demands, notices, summonses or legal papers or other information regarding legal proceedings;

**B.** fully cooperate with us or our designee in all investigations, the making of settlements, the conduct of suits or other proceedings, enforcing any right of contribution or indemnity against another who may be liable to you because of the "claim." The "insured" shall attend hearings and trials, assist in securing and giving evidence, and obtaining the attendance of witnesses; and

**C.** refuse, except at the "insured's" own cost, to voluntarily make any payment, assume any obligation or incur any expense other than reasonable medical expenses incurred at the time of the event.

## V. Separation of Insureds

This Policy applies separately to each of you against whom a "claim" is brought except with respect to:

**A.** the Limits of Liability; and

**B.** any of your duties as the "first named insured" on the Declarations.

## VI. Inspections and Surveys

We have the right but are not obligated to:

**A.** make inspections and surveys at any time;

**B.** give you reports on the conditions we find;

**C.** recommend changes; or

**D.** conduct loss control and prevention activity.

Any inspections, surveys, reports, or recommendations relate only to insurability and the premiums to be charged. We do not:

**A.** make safety inspections;



EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

**B.** undertake to perform the duty of any entity to provide for the health or safety of workers or the public; nor

**C.** warrant that conditions:

    **1.** are safe or healthful; or

    **2.** comply with laws, regulations, codes or standards.

This provision applies not only to us, but also to any rating, advisory, rate service, or similar orga-nization which makes insurance inspections, surveys, recommendations, reports, or gives loss control or prevention advice, on our behalf.

**VII.  Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this Policy at any time during the "policy period" and up to three years afterward.

**VIII.  Changes**

Notice to any of our agents or knowledge possessed by any such agent or any other person shall not act as a waiver or change in any part of this Policy. It also will not prevent us from asserting any rights under the provisions of this Policy. None of the provisions of this Policy will be waived, changed or modified except by written endorsement issued to form a part of this Policy.

**IX.  Transfer of Interest**

Assignment of interest under this Policy shall not bind us unless our consent is endorsed hereon.

**X.  Other Insurance or Risk Transfer Arrangements**

Any "claim" insured under any other insurance policy or risk transfer instrument, including, but not limited to, self-insured retentions, deductibles or other alternative arrangements, which applies to this "claim," shall be paid first by those instruments, policies or other arrangements. It is the intent of this Policy to apply only to loss that is more than the total limit of all deductibles, retentions, limits of liabil-ity, self-insured amounts or other valid and collectible insurance or risk transfer arrangements, whether primary, contributory, excess, contingent, or otherwise. In no event will we pay more than our Limit of Liability.

If this Policy and any other policy issued by us, our predecessor, or any of our affiliated companies or their predecessors apply to the same "claim," the Limits of Liability which apply to such "claim" will be the highest of the Limits of Liability available under this Policy, or any other single policy.

These provisions do not apply to other insurance policies or risk transfer arrangements written as specific excess insurance over the Limits of Liability of the Policy.

**XI.  Insurance Under More Than One Coverage**

If more than one of this Policy's "coverage forms" applies to the same "claim," only the "coverage form" most applicable to that type of "claim" or suit shall apply to it. We will not pay more than the Limit of Liability of the one individual "coverage form," or the actual amount of "damages" for which the "insured" is liable, whichever is less.

**XII.  Transfer of Rights of Recovery**

If any "insured" for whom we make payment under this Policy has rights to recover amounts from an-other, those rights are transferred to us to the extent of our payment. The "insured" must do every-thing necessary to secure our rights and must do nothing after a "claim" to impair them.

Nationwide

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

### XIII. Legal Action Limitation

No "insured" may bring any legal action against us concerning this Policy until:

**A.** the terms and conditions of this Policy have been fully complied with; and

**B.** the amount of the "insured's" obligation to pay has been decided. Such amount can be set by judgment against the "insured" after actual trial or by written agreement between the "insured," the claimant and us.

Any entity, or its legal representative, is entitled to recover under this Policy after it has secured a judgment or written agreement. Recovery is limited to the extent of the insurance afforded by this Policy. No entity has any right under this Policy to include us in any action against any "insured" to determine their liability, nor will any "insured" or their representative bring us into such an action.

### XIV. Bankruptcy

If you or your estate becomes bankrupt or insolvent, it does not change any of our obligations under this Policy.

### XV. Premium

All premium charges under this Policy will be computed according to our rules and rating plans which apply at the inception of the current "policy period." They may be paid to our authorized representative or us. The deposit premium is due on the inception date of the Policy.

We compute the premium you pay for this Policy using information available prior to the effective date of the Policy. On some policies we charge a fixed amount with no adjustment later. On other policies, all or part of your premium may be based on estimates.

If estimates are used, we compute your actual premium when complete information is available after the end of the "policy period." If it is more than you have already paid, you owe us the difference. If it is less, we shall pay you back the difference. But you will not pay less than any minimum annual premium agreed upon.

You must keep accurate records of the information we will need to compute your premium. You agree to send us these records at the end of each "policy period," or any other time we request them.

### XVI. Non-renewal

We can non-renew this policy by giving written notice to the first of you named on the Declarations, at your last known address, at least thirty (30) days before the expiration date. If notice is mailed, proof of mailing will be sufficient proof of notice.

### XVII. Cancellation

**A.** This Policy can be cancelled by either the first of you named on the Declarations or us.

**B.** Only the first of you named may cancel this Policy at any time. To do so, you must:

    **1.** return the Policy to us or any of our authorized representatives, indicating the effective date of cancellation; or

    **2.** provide a written notice to us, stating when the cancellation is to be effective.

We must receive the Policy or written notice before the cancellation date.

**C.** We can cancel this Policy by giving written notice to the first of you named on the Declarations, at your last known address at least:



EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM 2020CH04433

    1. ten (10) days, if we cancel for non-payment of premium; or

    2. thirty (30) days, if we cancel for any other reason before the effective date of cancellation.

**D.** Notice of cancellation will state the effective date of cancellation. The Policy will end on that date.

**E.** If we cancel, the refund will be pro rata. If you cancel, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**F.** If notice is mailed, proof of mailing will be sufficient proof of notice.

## XVIII. Entire Contract

By acceptance of this Policy, the "insured" agree that:

**A.** this Policy, consisting of the "application," these Common Conditions, the "coverage forms," and all endorsements listed in the Declarations, constitute the entire contract existing between them and us relating to this insurance;

**B.** this Policy is issued in reliance upon the "insured's" representations; and

**C.** the misrepresentation of any material matter by the "insured" or the "insured's" agent will render this Policy null and void and relieve us from all liability herein.

## XIX. Headings

The description in the headings and subheadings of this Policy is solely for convenience, and forms no part of the terms and conditions of coverage.

## XX. Subrogation

In the event of any payment under this Policy, we shall be subrogated to all the "insured's" rights of recovery thereof against any person or organization, including any rights such "insured" may have against any other "insured" involved in dishonest, fraudulent, criminal, malicious or intentional conduct. The "insured" shall execute and deliver instruments and papers and do whatever else is necessary to secure and collect upon such rights. The "insured" shall do nothing to prejudice such rights.

## XXI. "Subsidiaries" And "Newly Acquired Subsidiary"

**A.** With respect to any "subsidiary" on the date during the "policy period," that your direct or indirect ownership interest in a "subsidiary" becomes less than fifty percent (50%), of the issued and outstanding voting stock, such corporation shall cease to be a "subsidiary" under the terms of this Policy. In such event, coverage will be provided to such "subsidiary" under the Policy but only with respect to "incident" committed prior to such date in accordance with all other terms and conditions of this Policy. No coverage will be afforded under the Policy with respect to "claims" made against such "subsidiary" based on any "incident" committed or allegedly committed on or subsequent to such date.

**B.** No "newly acquired subsidiary" is an "insured" unless we have specifically agreed in writing to add such "newly acquired subsidiary" to the Policy as an "insured" by endorsement specifying the terms and conditions of its coverage.

## XXII. Changes to Your Business, Acquisitions and Mergers

**A.** The first of you named on the Declarations must provide prior notice to us of the following events:

    1. material or significant changes to the type or volume of the "professional services" reported to us in your "application."

    2. your merger with another entity; or



EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

3.  the acquisition of all or substantially all of your assets by another entity;

B.  Upon receipt of such notice, we may:

1.  adjust the premium to reflect the added exposure; or

2.  solely with respect to items **2.** and **3.** of paragraph **A.** above, deem this Policy to have ceased with respect to "claims" made against the "insured" based on any "incident" committed or allegedly committed on or subsequent to the time and date of said event. In such case, the "policy period" shall remain unaltered and coverage will continue but only with respect to a "incident" committed prior to the time and date of any such events in accordance with all other terms and conditions of this Policy.

## XXIII.  Legal Representatives

An "insured's" estate, heirs, executors, administrators, assigns and legal representatives shall be considered "insured" under this Policy in the event of such "insured's" death, incapacity, insolvency or bankruptcy, but only to the extent that such "insured" would have been provided coverage under this Policy.

## XXIV.  Waiver of Immunity

We will waive, both in the adjustment of "claims" and in the defense of suits against the "insured," any charitable immunity of the "insured," unless the "insured" requests in writing that we do not do so. Waiver of immunity as a defense will not subject us to liability for any portion of a "claim" or judgment in excess of the applicable Limit of Liability.

## XXV.  Extended Reporting Period—For any claims-made coverage parts of this Policy:

A.  Optional Extended Reported Period

If you provide us a written request within thirty (30) days of the termination date of the Policy requesting to purchase an optional "extended reporting period," and you pay the premium to us promptly when due together with any earned but unpaid premium which may be due under the terminated policy, an optional "extended reporting period" will be provided to you in accordance with our rules, rates and rating plans. Once paid, the premium for this option is non-refundable and considered fully earned.

B.  "Extended reporting periods" Limits of Liability

Our Limit of Liability for all "claims" reported during the automatic and optional "extended reporting periods" shall be part of and not in addition to the Limits of Liability for the "policy period" as set forth in the Declarations.

C.  Such "extended reporting periods" as set forth in paragraph **A.** shall not apply to "claims" that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the Limit of Liability applicable to such "claims."

D.  It is understood and agreed that the "extended reporting period" shall not be construed to be a new policy and any "claim" submitted during such period shall otherwise be governed by this Policy.

E.  The optional "extended reporting period" will cover, collectively, the initial thirty (30) day automatic "extended reporting period" and the optional "extended reporting period," if purchased. "Extended reporting period" coverage may not be cancelled.

## XXVI.  Economic and Trade Sanctions Condition

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this Policy is void **ab initio** (void from its inception) with respect to any term or condition of this



EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

Policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

**A.** Any "insured," or any person or entity claiming the benefits of an "insured," who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to U.S. economic or trade sanctions;

**B.** Any "claim" or suit that is brought in a Sanctioned Country or by a Sanctioned Country Government, where any action in connection with such "claim" or suit is prohibited by U.S. economic or trade sanctions;

**C.** Any "claim" or suit that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to U.S. economic or trade sanctions;

**D.** Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country Government, where any activities related to such property are prohibited by U.S. economic or trade sanctions; or

**E.** Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to U.S. economic or trade sanctions.

As used in this section, a Specially Designated National or Blocked Person is any person or entity that is on the list of Specially Designated Nationals and Blocked Persons issued by the U.S. Treasury Department's Office of Foreign Asset Control (O.F.A.C.) as it may be from time to time amended.

As used in this section, a Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States of America.

**XXVII. Definitions**

For purposes of this Policy, words in quotation marks have the meaning set forth below. However, any word in quotations referenced in these Common Conditions but defined in a "coverage form" shall, for purposes of coverage under that "coverage form," have the meaning set forth in that "coverage form."

**A.** "application" means all signed applications for this Policy and for any policy in an uninterrupted series of policies issued by us or any affiliate of ours of which this Policy is a renewal or replacement. "Application" includes any materials submitted or required to be submitted therewith.

**B.** "claim" as used in these Common Conditions has the same meaning as the defined word "claim," in the applicable "coverage forms."

**C.** "coverage form" means only those coverage forms designated as included in the Declarations.

**D.** "extended reporting period" means the period of time after the termination of the "policy period" for reporting "claims" to us that are made against the "insured" during the applicable "policy period."

**E.** "incident" as used in these Common Conditions has the same meaning as the defined word "incident" in the applicable "coverage form."

**F.** "insured" has the meaning set forth in each "coverage form."

**G.** "newly acquired subsidiary" means any entity, newly formed or acquired by you during the "policy period."

**H.** "prejudgment interest and post judgment interest" means interest that accrues prior to or after entry of a judgment, verdict or award. However, any interest which is awarded as a penalty against an "insured" does not constitute "prejudgment interest and post judgment interest."



EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

I.  "policy period" means the period from the effective date of this Policy shown in the Declarations to the expiration date of the policy shown in the Declarations or an earlier cancellation date of this Policy.

J.  "subsidiary" means those "insured's" except than the "first named insured" listed on the Declarations at the inception of the Policy.

_____

AUTHORIZED REPRESENTATIVE              DATE

**Nationwide**

EXHIBIT 1

Underwritten by Scottsdale Insurance Company

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| SHS0000061 | 03/01/2018 | Major Hospital DBA SM Healthcare, LLC | 05409 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SENIOR CARE ENHANCEMENT ENDORSEMENT

In consideration of the premium paid, it is agreed that this endorsement
modifies insurance provided under the following:

### SENIOR CARE PROFESSIONAL LIABILITY COVERAGE FORM

This policy provides coverage under the coverage forms designated with an "x" below. In the event that coverage is granted under more than one coverage form, the terms in quotation marks will have the meaning set forth in the applicable coverage form.

❑ Commercial General Liability

☒ Professional Liability

❑ Employee Benefit Liability

❑ Products-Completed Operations Hazard

Professional Liability Coverage Form **SECTION I—COVERAGE, B. DEFENSE AND SUPPLEMENTAL PAYMENTS** is amended to add:

### 6. RESIDENT LOSS OR DAMAGE TO PROPERTY REIMBURSEMENT COVERAGE

Upon proof of payment by the "named insured," we will reimburse the "named insured" up to the amount set forth in Coverage **F.** of the Declarations for any loss of, or damage to, personal property of a "resident" provided that:

**a.** the loss or damage occurred while the "resident" is receiving "professional services";

**b.** the loss or damage occurred during the "policy period";

**c.** the "Insured" provides the company with written proof of payment for such loss or damage within sixty (60) days of occurrence of the loss or damage.

The Each Claim limit stated in Coverage **6.** of the Declarations is the maximum Limit of Liability for all loss resulting from each claim or related claims for which Coverage **6.** applies.

The Aggregate limit stated in Coverage **6.** of the Declarations is the maximum Limit of Liability for all Loss resulting in claims or related claims for which Coverage **6.** applies.

For the purposes of Coverage **6.** no deductible or self-insured retention will apply.



FILED DATE: 6/3/2020 12:37 PM 2020CH04433

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

### 7. SUPERBUG CLEAN-UP REIMBURSEMENT COVERAGE

Upon proof of payment by the "named insured," we will reimburse the "named insured" up to the amount set forth in Coverage **7.** of the Declarations for "clean-up expenses" paid by the "named insured" in connection with a single "superbug contamination" that occurs during the "policy period," subject to the limit of liability and self-insured retention noted below:

**a.** $25,000—Maximum Aggregate Limit of Liability for all "clean-up expenses" resulting from a covered "superbug contamination."

**b.** $5,000—Insured's Self Insured Retention for a covered "superbug contamination." Our obligation to reimburse "clean-up expenses" under paragraph **a.** above shall be excess of the self-insured retention noted here.

Solely with respect to the coverage afforded under Coverage **7.**, the following definitions apply:

"clean-up expenses" means reasonable costs and expenses incurred by the "named insured" through the use of a third-party contractor to disinfect a "named insured" facility as a result of a "superbug contamination." "Clean-up expenses" shall not include any remuneration, salaries, overhead or benefit expenses of the "named insured."

"superbug contamination" means the actual contamination of a "named insured" facility with methicillin-resistant Staphylococcus aureus, vancomycin intermediate sensitive Staphylococcus aureus or vancomycin-resistant Enterococcus.

### 8. EVACUATION EXPENSE REIMBURSEMENT COVERAGE

Upon proof of payment by the "named insured," we will reimburse the "named insured" up to the amount set forth in Coverage **H.** of the Declarations for "evacuation expenses" incurred in connection with an "evacuation" which first takes place during the "policy period" and is reported in accordance with this coverage item **8.** and subject to the sublimit shown in Coverage **8.** of the Declarations.

The annual aggregate "evacuation expense" limit shown in the Declarations is the maximum we will pay for all expenses in any way related to, in whole or in part, "evacuation expense."

Subject to the annual aggregate "evacuation expense" limit, the each "claim" "evacuation expense" limit shown in Coverage **H.** of the Declarations is the maximum we will pay for expenses for any one "claim" in any way related to, in whole or in part, "evacuation expense."

For the purposes of Evacuation Expense Coverage, no coverage will be available for "evacuation expenses" arising out of any:

**a.** strike or bomb threat, unless the "evacuation" was ordered by a civil authority;

**b.** false fire alarm or a planned evacuation drill;

**c.** vacating of one or more residents because of their individual medical condition;

**d.** nuclear reaction, radiation or any radioactive contamination, however caused;

**e.** seizure or destruction of property by order of a governmental authority; provided that this exclusion shall not apply to an order of "evacuation" by a governmental authority due to a condition described above; or

**f.** war, including undeclared or civil war, warlike action by a military force, insurrection, rebellion or revolution.

**Nationwide®**

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

For the purposes of Evacuation Expense Coverage, the following definitions are added:

"Evacuation" means the removal of all or the majority of "residents" from one or more of your "insured locations" in response to an actual or threatened, natural or man-made condition, that is unexpected and unforeseen and, causes the "residents" of such "insured location" to be in imminent danger of loss of life or physical harm. Such condition must be in the form of an emergency or sudden crisis requiring immediate action, and not the result of a latent or hidden condition at the "insured location."

"Evacuation expenses" means reasonable costs and expenses actually incurred by you in connection with an "evacuation," including the costs associated with transporting and lodging "residents" who have been evacuated. "Evacuation expenses" shall not include any remuneration, salaries, overhead, fees or benefit expenses of the "named insured" or any "insured."

Duties in the Event an "evacuation" occurs:

a.  Any "evacuation" shall be reported to us as soon as practicable, but in no event later than thirty (30) days after you first incur "evacuation expenses" for which coverage will be requested, or thirty (30) days after the expiration date of your policy, whichever is earlier.

b.  You are not required to obtain our prior written approval or consent before incurring any "evacuation expenses."

## 9.  HIPAA REIMBURSEMENT COVERAGE

Upon proof of payment by the "named insured," we will reimburse the "named insured" up to the amount set forth in Coverage **I.** of the Declarations for "HIPAA Fines and Penalties" paid by the "named insured" resulting from a "HIPAA Violation" that occurs during the "policy period."

Solely as respects the coverage afforded by **Item 9.** the following definitions apply:

"HIPAA fines and penalties" means any fines and/or penalties imposed upon an "insured" under Title II of the Health Insurance Portability and Accountability Act.

"HIPAA Violation" means any violation by an "insured" of Title II of the Health Insurance Portability and Accountability Act.

Solely with respect to the coverage afforded under Coverage **I.** above, "damages" as defined in **SECTION II—DEFINITIONS,** paragraph **H.2.** of this Policy, is deleted and replaced by the following:

**2.**  civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to law, statute, regulation or court rule except "HIPAA Fines and Penalties";

Our maximum aggregate Limit of Liability for all "HIPAA fines and penalties" resulting from all "HIPAA violations" reimbursed under **Item 9.** above will not exceed the amounts shown in Coverage **9.** of the Declarations.

If, during the "policy period," a "HIPAA violation" occurs, as a condition precedent to its right to reimbursement under this endorsement, the "named insured" must give us written notice of such "HIPAA violation" as soon as practicable thereafter, but in no event later than thirty (30) days after the expiration date or earlier cancellation date of this Policy.

## 10.  CRISIS COSTS

We will pay the "crisis costs" of a "named insured" up to the amount set forth in **Item J.** of the Declarations for a "crisis" first occurring and reported to us during the "policy period."

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

Solely with respect to the coverage afforded under Coverage **10.**, the following definitions apply:

"crisis" means the publication, in a daily newspaper of general circulation or a radio, internet or television news report, of unfavorable information regarding a "disciplinary proceeding" or "incident" involving a "named insured" that is reasonably likely to lessen public confidence in the competence, integrity or viability of the "named insured" to conduct business.

"crisis costs" means reasonable costs incurred by the "named insured "in the management of public relations with respect to a "disciplinary proceeding" or an "incident," including reasonable fees and costs of third-party media consultants. "Crisis costs" shall not include any remuneration, salaries, overhead, fees, loss of earning reimbursement or benefit expenses of any "insured." "Crisis costs" must be incurred by the "named insured" during the pendency of or within ninety (90) days prior to, and in the anticipation of, a "crisis," regardless of whether a "claim" is ever made against a "named insured" arising from such "crisis," and, in the event that a "claim" is made, regardless of whether the expenses are incurred prior to or subsequent to the "claim":

Duties in the Event of a "Crisis"

**a.** Any "crisis" shall be reported to us as soon as practicable, but in no event later than thirty (30) days after you first incur "crisis costs" for which coverage will be requested, or thirty (30) days after the expiration date of your policy, or whichever is earlier.

**b.** You are not required to obtain our prior written approval or consent before incurring any "crisis" costs.

All other terms and conditions of this Policy remain unchanged.

_____          _____

AUTHORIZED REPRESENTATIVE                                              DATE

EXHIBIT 1

Underwritten by Scottsdale Insurance Company

**ENDORSEMENT
NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| SHS0000061 | 03/01/2018 | Major Hospital DBA SM Healthcare, LLC | 05409 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADDITIONAL INSURED—BLANKET ADDITIONAL INSURED WHERE REQUIRED BY WRITTEN CONTRACT OR AGREEMENT

In consideration of the premium paid, it is agreed that this endorsement
modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM
### SENIOR CARE PROFESSIONAL LIABILITY COVERAGE FORM

This policy provides coverage under the coverage forms designated with an "x" below. In the event that coverage is granted under more than one coverage form, the terms in quotation marks will have the meaning set forth in the applicable coverage form.

☒ Commercial General Liability

☒ Professional Liability

☒ Employee Benefit Liability

☒ Products-Completed Operations Hazard

**A. Commercial General Liability SECTION II—WHO IS AN INSURED** is amended to include any person or organization to whom or to which the "named insured" is obligated by virtue of a written contract or agreement to include as an additional insured for its liability and hold harmless or indemnify such person or organization, but such person or organization but only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused solely by your acts or omissions or the acts or omissions of those acting on your behalf:

1. In the performance of your ongoing operations; or

2. In connection with your premises owned by or rented to you.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. The insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B. Professional Liability SECTION IV—WHO IS AN INSURED** is amended to include the following:

Any person or organization to whom or to which the "named insured" is obligated by virtue of a written contract or agreement to include as an additional insured for its liability; and to hold harmless or indemnify such person or organization, but such person or organization is an insured solely for the liability imposed upon such person or organization because of acts, errors or omissions in the rendering

Nationwide®

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

of covered "professional services" by the "named insured," and only to the extent of the limits of insurance required by such contract or agreement, not to exceed the limits of insurance of this policy.

This provision does not apply:

1. unless the written contract or agreement has been executed prior to the act, error or omission upon which the "claim" is based. The contract or agreement will be considered executed when the Insured's performance begins, or when it is signed whichever happens first; or

2. to any "newly acquired or newly formed entity" unless the Insurer agrees to provide coverage to such "newly acquired or newly formed entity" and such entity is listed in a "subsidiary" endorsement;

All other terms and conditions of this Policy remain unchanged.

AUTHORIZED REPRESENTATIVE        DATE

SHS-5 (6-17)        Page 2 of 2        **Nationwide®**

EXHIBIT 1

Underwritten by Scottsdale Insurance Company

**ENDORSEMENT NO. _____**

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| SHS0000061 | 03/01/2018 | Major Hospital DBA SM Healthcare, LLC | 05409 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MINIMUM EARNED PREMIUM ENDORSEMENT

In consideration of the premium paid, it is agreed that this endorsement modifies insurance provided under the following:

### ALL COVERAGE PARTS INCLUDED IN THIS POLICY

This policy provides coverage under the coverage forms designated with an "x" below. In the event that coverage is granted under more than one coverage form, the terms in quotation marks will have the meaning set forth in the applicable coverage form.

☒ Commercial General Liability

☒ Professional Liability

☒ Employee Benefit Liability

☒ Products-Completed Operations Hazard

In consideration of the premium charged, it is understood and agreed that, for all purposes under this Policy, premium in an amount equal to twenty-five percent (25%) of the full annual premium for this Policy, as set forth in the Declarations, will be deemed fully earned as of the Inception Date set forth in the Declarations.

All other terms and conditions of this Policy remain unchanged.

_____          _____

AUTHORIZED REPRESENTATIVE                                     DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012



SHS-7 (6-17)                              Page 1 of 1

EXHIBIT 1

Underwritten by Scottsdale Insurance Company

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| SHS0000061 | 03/01/2018 | Major Hospital DBA SM Healthcare, LLC | 05409 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EMPLOYEE BENEFITS LIABILITY COVERAGE

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE. PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

In consideration of the premium paid, it is agreed that this endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

This policy provides coverage under the coverage forms designated with an "x" below. In the event that coverage is granted under more than one coverage form, the terms in quotation marks will have the meaning set forth in the applicable coverage form.

☒ Commercial General Liability

☐ Professional Liability

☒ Employee Benefit Liability

☐ Products-Completed Operations Hazard

| Coverage | Limit Of Insurance | | Each Employee Deductible | Premium |
|---|---|---|---|---|
| **Employee Benefits Programs** | $ | each employee | $ | $ |
| | $ | aggregate | | |
| **Retroactive Date:** | | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | |

**A.** The following is added to **SECTION I—COVERAGES:**

**COVERAGE—EMPLOYEE BENEFITS LIABILITY**

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2006

SHS-8 (6-17)

 Nationwide®

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

    (1) The amount we will pay for damages is limited as described in paragraph **D. (SECTION III—LIMITS OF INSURANCE)**; and

    (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**b.** This insurance applies to damages only if:

    (1) The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

    (2) The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

    (3) A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with paragraph **c.** below, during the policy period or an Extended Reporting Period we provide under paragraph **F.** of this endorsement.

**c.** A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

    (1) When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

    (2) When we make settlement in accordance with paragraph **a.** above.

A "claim" received and recorded by the insured within sixty (60) days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the "claim."

**d.** All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

## 2. Exclusions

This insurance does not apply to:

### a. Dishonest, Fraudulent, Criminal Or Malicious Act

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

### b. Bodily Injury, Property Damage, Or Personal And Advertising Injury

"Bodily injury," "property damage" or "personal and advertising injury."

### c. Failure To Perform A Contract

Damages arising out of failure of performance of contract by any insurer.

### d. Insufficiency Of Funds

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program."



EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM  2020CH04433

**e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

(1) Failure of any investment to perform;

(2) Errors in providing information on past performance of investment vehicles; or

(3) Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program."

**f. Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**g. ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**h. Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**i. Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**j. Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

**B.** For the purposes of the coverage provided by this endorsement:

**1.** All references to Supplementary Payments—Coverages **A** and **B** are replaced by Supplementary Payments—Coverages **A**, **B** and **Employee Benefits Liability.**

**2.** Paragraphs **1.b.** and **2.** of the Supplementary Payments provision do not apply.

**C.** For the purposes of the coverage provided by this endorsement, paragraphs **2.** and **3.** of **SECTION II—WHO IS AN INSURED** are replaced by the following:

**2.** Each of the following is also an insured:

**a.** Each of your "employees" who is or was authorized to administer your "employee benefit program."

**b.** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.



EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

   a. Coverage under this provision is afforded only until the ninetieth (90th) day after you acquire or form the organization or the end of the policy period, whichever is earlier.

   b. Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

D. For the purposes of the coverage provided by this endorsement, **SECTION III—LIMITS OF INSURANCE** is replaced by the following:

1. **Limits Of Insurance**

   a. The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

      (1) Insureds;

      (2) "Claims" made or "suits" brought;

      (3) Persons or organizations making "claims" or bringing "suits";

      (4) Acts, errors or omissions; or

      (5) Benefits included in your "employee benefit program."

   b. The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program."

   c. Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee," including damages sustained by such "employee's" depen-dents and beneficiaries, as a result of:

      (1) An act, error or omission; or

      (2) A series of related acts, errors or omissions;

      negligently committed in the "administration" of your "employee benefit program."

      However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program."

      The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

2. **Deductible**

   a. Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

   b. The deductible amount stated in the Schedule applies to all damages sustained by any one "employee," including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2006
Page 4 of 8

SHS-8 (6-17)

Nationwide

EXHIBIT 1

FILED DATE: 8/3/2020 12:37 PM   2020CH04433

   **c.** The terms of this insurance, including those with respect to:

      **(1)** Our right and duty to defend any "suits" seeking those damages; and

      **(2)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim";

     apply irrespective of the application of the deductible amount.

   **d.** We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

**E.** For the purposes of the coverage provided by this endorsement, Conditions **2.** and **4.** of **SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS** are replaced by the following:

  **2. Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

   **a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim." To the extent possible, notice should include:

      **(1)** What the act, error or omission was and when it occurred; and

      **(2)** The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

   **b.** If a "claim" is made or "suit" is brought against any insured, you must:

      **(1)** Immediately record the specifics of the "claim" or "suit" and the date received; and

      **(2)** Notify us as soon as practicable.

     You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

      **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

      **(2)** Authorize us to obtain records and other information;

      **(3)** Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

      **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

   **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

  **4. Other Insurance**

   If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

   **a. Primary Insurance**

     This insurance is primary except when paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in paragraph **c.** below.

EXHIBIT 1

b. **Excess Insurance**

    (1) This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

        (a) No Retroactive Date is shown in the Schedule of this insurance; or

        (b) The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

    (2) When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

    (3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

    (4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

c. **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

F. For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

1. You will have the right to purchase an Extended Reporting Period, as described below, if:

    a. This endorsement is canceled or not renewed; or

    b. We renew or replace this endorsement with insurance that:

        (1) Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

        (2) Does not apply to an act, error or omission on a claims-made basis.

2. The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period, but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

3. An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2006



FILED DATE: 6/3/2020 12:37 PM  2020CH04433

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

You must give us a written request for the endorsement within sixty (60) days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

a. The "employee benefit programs" insured;

b. Previous types and amounts of insurance;

c. Limits of insurance available under this endorsement for future payment of damages; and

d. Other related factors.

The additional premium will not exceed one hundred percent (100%) of the annual premium for this endorsement.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

4. If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

Paragraph **D.1.b.** of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in paragraph **D.1.c.**

G. For the purposes of the coverage provided by this endorsement, the following definitions are added to the **Definitions** Section:

1. "Administration" means:

a. Providing information to "employees," including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

b. Handling records in connection with the "employee benefit program"; or

c. Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program."

However, "administration" does not include handling payroll deductions.

2. "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

3. "Claim" means any demand, or "suit," made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

4. "Employee benefit program" means a program providing some or all of the following benefits to "employees," whether provided through a "cafeteria plan" or otherwise:

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2006



EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM 2020CH04433

    **a.** Group life insurance, group accident or health insurance, dental, vision and hearing plans, and flexible spending accounts, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

    **b.** Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

    **c.** Unemployment insurance, social security benefits, workers' compensation and disability benefits;

    **d.** Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

    **e.** Any other similar benefits designated in the Schedule or added thereto by endorsement.

**H.** For the purposes of the coverage provided by this endorsement, Definitions **5.** and **18.** in the **Definitions** Section are replaced by the following:

    **5.** "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

    **18.** "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

        **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

        **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

All other terms and conditions of this Policy remain unchanged.

_____

AUTHORIZED REPRESENTATIVE          DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2006

Page 8 of 8

**Nationwide**

SHS-8 (6-17)

EXHIBIT 1

Underwritten by Scottsdale Insurance Company

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| SHS0000061 | 03/01/2018 | Major Hospital DBA SM Healthcare, LLC | 05409 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## HIRED AUTO AND NON-OWNED AUTO LIABILITY

In consideration of the premium paid, it is agreed that this endorsement
modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

This policy provides coverage under the coverage forms designated with an "x" below. In the event that coverage is granted under more than one coverage form, the terms in quotation marks will have the meaning set forth in the applicable coverage form.

☒ Commercial General Liability

☐ Professional Liability

☐ Employee Benefit Liability

☐ Products-Completed Operations Hazard

### SCHEDULE

Insurance is provided only with respect to those coverages for which a specific premium charge is shown:

| Coverage | Additional Premium |
|---|---|
| Hired Auto Liability | $ |
| Non-Owned Auto Liability | Included |

**A.** Insurance is provided only for those coverages for which a specific premium charge is shown in the Declarations or in the Schedule.

    **1. HIRED AUTO LIABILITY**

        The insurance provided under **Coverage A (SECTION I)** of the **COMMERCIAL GENERAL LIABILITY COVERAGE PART** applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your employees in the course of your business.

    **2. NON-OWNED AUTO LIABILITY**

        The insurance provided under **Coverage A (SECTION I)** of the **COMMERCIAL GENERAL LIABILITY COVERAGE PART** applies to "bodily injury" or "property damage" arising out of the use of any "non-owned auto" in your business by any person other than you.

**B.** For insurance provided by this endorsement only:

    **1.** The exclusions, under **Coverage A (SECTION I)** of the **COMMERCIAL GENERAL LIABILITY COVERAGE PART**, other than exclusions **a, b, d, f** and **l** and the Nuclear Energy Liability Exclusion (Broad Form) are deleted and replaced by the following:

        **a.** "Bodily injury" to an employee of the insured arising out of and in the course of employment by the insured.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

SHS-9 (6-17)

Page 1 of 2

 **Nationwide**

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM    2020CH04433

But this exclusion does not apply to "bodily injury" to domestic employees not entitled to workers' compensation benefits or to liability assumed by the insured under an "insured contract."

**b.** "Property damage" to:

(1) Property owned or being transported by, or rented or loaned to the insured; or

(2) Property in the care, custody or control of the insured.

**2. WHO IS AN INSURED (SECTION II)** of the **COMMERCIAL GENERAL LIABILITY COVERAGE PART** is replaced by the following:

Each of the following is an insured under this endorsement to the extent set forth below:

**a.** You;

**b.** Any other person using a "hired auto" with your permission;

**c.** For a "non-owned auto," any partner or executive officer of yours, but only while such "non-owned auto" is being used in your business; and

**d.** Any other person or organization, but only for their liability because of acts or omissions of an insured under **a.**, **b.** or **c.** above.

None of the following is an insured:

(1) Any person engaged in the business of his or her employer for "bodily injury" to any co-employee of such person injured in the course of employment;

(2) Any partner or executive officer for any "auto" owned by such partner or officer or a member of his or her household;

(3) Any person while employed in or otherwise engaged in duties in connection with an "auto business," other than an "auto business" you operate;

(4) The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or employee of any such owner or lessee; or

(5) Any person or organization for the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**C.** The following additional definitions apply:

**1.** "Auto Business" means the business or occupation of selling, repairing, servicing, storing or parking "autos."

**2.** "Hired Auto" means any "auto" you lease, hire or borrow. This does not include any "auto" you lease, hire or borrow from any of your employees or members of their households, or from any partner or executive officer of yours.

**3.** "Non-Owned Auto" means any "auto" you do not own, lease, hire or borrow which is used in connection with your business. However, if you are a partnership, a "non-owned auto" does not include any "auto" owned by any partner.

All other terms and conditions of this Policy remain unchanged.

---

AUTHORIZED REPRESENTATIVE                                          DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

SHS-9 (6-17)                                    Page 2 of 2



EXHIBIT 1

Underwritten by Scottsdale Insurance Company

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| SHS0000061 | 03/01/2018 | Major Hospital DBA SM Healthcare, LLC | 05409 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION—SERVICES FURNISHED BY HEALTH CARE PROVIDERS

In consideration of the premium paid, it is agreed that this endorsement
modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

### SCHEDULE

This policy provides coverage under the coverage forms designated with an "x" below. In the event that coverage is granted under more than one coverage form, the terms in quotation marks will have the meaning set forth in the applicable coverage form.

☒ Commercial General Liability

☐ Professional Liability

☐ Employee Benefit Liability

☐ Products-Completed Operations Hazard

**Description of Operations:**
Senior Living Community

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

The following exclusion is added to paragraph **2. Exclusions** of **SECTION I—COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. EXCLUSIONS OF SECTION I—COVERAGE B—PERSONAL AND ADVERTISING INJURY LIABILITY:**

With respect to any operation shown in the Schedule, this insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" arising out of:

1. The rendering of or failure to render:

    a. Medical, surgical, dental, x-ray or nursing service, treatment, advice or instruction, or the re-lated furnishing of food or beverages;

    b. Any health or therapeutic service, treatment, advice or instruction; or

    c. Any service, treatment, advice or instruction for the purpose of appearance or skin enhance-ment, hair removal or replacement or personal grooming;

2. The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances; or

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

**Nationwide**

SHS-14 (6-17)

Page 1 of 2

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

**3.** The handling or treatment of dead bodies, including autopsies, organ donation or other proce-
dures.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the
supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which
caused the "bodily injury" or "property damage," or the offense which caused the "personal and advertis-
ing injury," involved that which is described in paragraph **1.**, **2.** or **3.**

All other terms and conditions of this Policy remain unchanged.

_____          _____
AUTHORIZED REPRESENTATIVE                                    DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012



EXHIBIT 1

Underwritten by Scottsdale Insurance Company

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| SHS0000061 | 03/01/2018 | Major Hospital DBA SM Healthcare, LLC | 05409 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

In consideration of the premium paid, it is agreed that this endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

This policy provides coverage under the coverage forms designated with an "x" below. In the event that coverage is granted under more than one coverage form, the terms in quotation marks will have the meaning set forth in the applicable coverage form.

☒ Commercial General Liability

☐ Professional Liability

☐ Employee Benefit Liability

☐ Products-Completed Operations Hazard

**A.** The following exclusion is added to paragraph **2. Exclusions** of **SECTION I—COVERAGES, COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2003

SHS-15 (6-17)

Page 1 of 2

 Nationwide

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM    2020CH04433

**B.** The following exclusion is added to paragraph **2. EXCLUSIONS** of **SECTION I—COVERAGES, COVERAGE B—PERSONAL AND ADVERTISING INJURY LIABILITY:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **DEFINITIONS** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

All other terms and conditions of this Policy remain unchanged.

AUTHORIZED REPRESENTATIVE                    DATE

Includes copyrighted material of ISO Properties, Inc., with its permission
Copyright, ISO Properties, Inc., 2003



SHS-15 (6-17)                                   Page 2 of 2

EXHIBIT 1

Underwritten by Scottsdale Insurance Company

**ENDORSEMENT NO. _____**

FILED DATE: 6/3/2020 12:37 PM 2020CH04433

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| SHS0000061 | 03/01/2018 | Major Hospital DBA SM Healthcare, LLC | 05409 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ABUSE OR MOLESTATION EXCLUSION

In consideration of the premium paid, it is agreed that this endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

This policy provides coverage under the coverage forms designated with an "x" below. In the event that coverage is granted under more than one coverage form, the terms in quotation marks will have the meaning set forth in the applicable coverage form.

☒ Commercial General Liability

❑ Professional Liability

❑ Employee Benefit Liability

❑ Products-Completed Operations Hazard

The following exclusion is added to paragraph **2., EXCLUSIONS** of **SECTION I, COVERAGES, COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2., EXCLUSIONS** of **SECTION I, COVERAGES—COVERAGE B—PERSONAL AND ADVERTISING INJURY LIABILITY:**

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" arising out of:

**1.** The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

**2.** The negligent:

   **a.** Employment;

   **b.** Investigation;

   **c.** Supervision;

   **d.** Reporting to the proper authorities, or failure to so report; or

   **e.** Retention;

   of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraph **1.** above.

All other terms and conditions of this Policy remain unchanged.

_____        _____
AUTHORIZED REPRESENTATIVE                                      DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 1997

SHS-16 (6-17)

Nationwide®

EXHIBIT 1

Underwritten by Scottsdale Insurance Company

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| SHS0000061 | 03/01/2018 | Major Hospital DBA SM Healthcare, LLC | 05409 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CONTRACTUAL LIABILITY LIMITATION

In consideration of the premium paid, it is agreed that this endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

This policy provides coverage under the coverage forms designated with an "x" below. In the event that coverage is granted under more than one coverage form, the terms in quotation marks will have the meaning set forth in the applicable coverage form.

☒ Commercial General Liability

❑ Professional Liability

❑ Employee Benefit Liability

❑ Products-Completed Operations Hazard

The definition of "insured contract" in the **DEFINITIONS** Section is replaced by the following:

"Insured contract" means:

    **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    **b.** A sidetrack agreement;

    **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within fifty (50) feet of a railroad;

    **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality; or

    **e.** An elevator maintenance agreement.

All other terms and conditions of this Policy remain unchanged.

_____

AUTHORIZED REPRESENTATIVE        DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 1992

SHS-17 (6-17)        Page 1 of 1        Nationwide

FILED DATE: 6/3/2020 12:37 PM  2020CH04433

EXHIBIT 1

Underwritten by Scottsdale Insurance Company

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| SHS0000061 | 03/01/2018 | Major Hospital DBA SM Healthcare, LLC | 05409 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION OF PUNITIVE DAMAGES
## RELATED TO A CERTIFIED ACT OF TERRORISM

In consideration of the premium paid, it is agreed that this endorsement modifies insurance provided under the following:

### SENIOR CARE LIABILITY POLICY

This policy provides coverage under the coverage forms designated with an "x" below. In the event that coverage is granted under more than one coverage form, the terms in quotation marks will have the meaning set forth in the applicable coverage form.

☒ Commercial General Liability

☒ Professional Liability

☒ Employee Benefit Liability

☒ Products-Completed Operations Hazard

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2015

 Nationwide

EXHIBIT 1

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

FILED DATE: 6/3/2020 12:37 PM 2020CH04433

All other terms and conditions of this Policy remain unchanged.

_____

AUTHORIZED REPRESENTATIVE                    DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2015

SHS-29 (6-17)                    Page 2 of 2

**Nationwide®**

EXHIBIT 1

Underwritten by Scottsdale Insurance Company

**ENDORSEMENT NO. _____**

FILED DATE: 6/3/2020 12:37 PM 2020CH04433

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| SHS0000061 | 03/01/2018 | Major Hospital DBA SM Healthcare, LLC | 05409 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION OF CERTIFIED ACTS OF TERRORISM

In consideration of the premium paid, it is agreed that this endorsement modifies insurance provided under the following:

**SENIOR CARE LIABILITY POLICY**

This policy provides coverage under the coverage forms designated with an "x" below. In the event that coverage is granted under more than one coverage form, the terms in quotation marks will have the meaning set forth in the applicable coverage form.

☒ Commercial General Liability

☒ Professional Liability

☒ Employee Benefit Liability

☒ Products-Completed Operations Hazard

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism."

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes, but is not limited to, "bodily injury," "property damage," "personal and advertising injury," "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2014

SHS-32 (6-17)

 Nationwide

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM  2020CH04433

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

All other terms and conditions of this Policy remain unchanged.

---

AUTHORIZED REPRESENTATIVE                    DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2014

SHS-32 (6-17)                    Page 2 of 2

Nationwide

EXHIBIT 1

Underwritten by Scottsdale Insurance Company

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| SHS0000061 | 03/01/2018 | Major Hospital DBA SM Healthcare, LLC | 05409 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NAMED INSURED SCHEDULE

In consideration of the premium paid, it is agreed that this endorsement modifies insurance provided under the following:

### GENERAL TERMS AND CONDITIONS

### SCHEDULE

The following "named insureds" are included on this Policy:

DYER NURSING AND REHABILITATION CENTER
    Retro Date: 11/01/2003 ($250,000/$750,000 Indiana PCF Limits)
    Retro Date: 03/01/2013 ($250,000/$1,250,000 Indiana PCF Limits)
SHEFFIELD MANOR ASSISTED LIVING RESIDENCE
    Retro Date: 11/01/2003 ($250,000/$750,000 Indiana PCF Limits)
    Retro Date: 03/01/2013 ($250,000/$1,250,000 Indiana PCF Limits)
LAKE COUNTY NURSING AND REHABILITATION CENTER
    Retro Date: 11/01/2003 ($250,000/$750,000 Indiana PCF Limits)
    Retro Date: 03/01/2013 ($250,000/$1,250,000 Indiana PCF Limits)
SEBO'S NURSING AND REHABILITATION CENTER
    Retro Date: 11/01/2003 ($250,000/$750,000 Indiana PCF Limits)
    Retro Date: 03/01/2013 ($250,000/$1,250,000 Indiana PCF Limits)
SPRING MILL HEALTH CAMPUS
    Retro Date: 04/30/2017 ($1,000,000/$3,000,000 Limits)
DLS FINANCIAL CONSULTING, LLC
EXTENDED CARE CONSULTING, LLC
EXTENDED CARE CLINICAL, LLC
SM REAL ESTATE, LLC
SM HEALTHCARE, LLC
LAKE COUNTY CONSULTING, LLC
DYER CONSULTING, LLC
CENTRAL STREET MANAGEMENT, LLC
DYER HEALTH CARE PROPERTIES, LLC
SEBO'S HEALTH CARE PROPERTIES, LLC
EAST LAKE HEALTH CARE PROPERTIES, LLC
SHERIDAN HEALTHCARE SERVICES, LLC
ROTHNER HEALTH VENTURES I, LLC

All other terms and conditions of this Policy remain unchanged.

_____

AUTHORIZED REPRESENTATIVE        DATE



EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM 2020CH04433

Underwritten by Scottsdale Insurance Company

**ENDORSEMENT NO. _____**

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| SHS0000061 | 03/01/2018 | Major Hospital DBA SM Healthcare, LLC | 05409 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SCHEDULE OF PREMISES

In consideration of the premium paid, it is agreed that this endorsement modifies insurance provided under the following:

**PROFESSIONAL LIABILITY COVERAGE FORM
COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

In addition to the Named Insured Address set forth in the Declarations, all of the premises you own, rent or occupy are shown in the Schedule below, unless expressly stated otherwise in this Policy.

### SCHEDULE

### ALL PREMISES YOU OWN, RENT OR OCCUPY

Location# 1 / Building# 1: 601 SHEFFIELD AVE, DYER, IN 46311
Location# 1 / Building# 2: 601 SHEFFIELD AVE, DYER, IN 46311
Location# 2 / Building# 1: 5025 MCCOOK AVE, EAST CHICAGO, IN46312
Location# 3 / Building# 1: 4410 W 49TH AVE, HOBART, IN 46342
Location# 4 / Building# 1: 101 W 87TH AVE, MERRILLVILLE, IN46410
Location# 4 / Building# 2: 101 W 87TH AVE, MERRILLVILLE, IN 46410

All other terms and conditions of this Policy remain unchanged.

_____   _____
AUTHORIZED REPRESENTATIVE              DATE



SHS-38 (9-17)                   Page 1 of 1

EXHIBIT 1

Underwritten by Scottsdale Insurance Company

**ENDORSEMENT NO. _____**

FILED DATE: 6/3/2020 12:37 PM 2020CH04433

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| SHS0000061 | 03/01/2018 | Major Hospital DBA SM Healthcare, LLC | 05409 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AGGREGATE LIMITS PER LOCATION AND MAXIMUM AGGREGATE LIMIT

In consideration of the premium paid, it is agreed that this endorsement
modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM
SENIOR CARE PROFESSIONAL LIABILITY COVERAGE FORM**

This policy provides coverage under the coverage forms designated with an "x" below. In the event that coverage is granted under more than one coverage form, the terms in quotation marks will have the meaning set forth in the applicable coverage form.

☒ Commercial General Liability

☒ Professional Liability

☐ Employee Benefit Liability

☐ Products-Completed Operations Hazard

### SCHEDULE

Combined Maximum Aggregate Limit:  $6,000,000 _____

(Information required to complete this Schedule, if not shown above, will be shown in the Declarations.)

**I.  Combined Maximum Aggregate Limit**

The Combined Maximum Aggregate Limit shown in the Schedule is the most we will pay for the sum of:

1.  Medical expenses under General Liability Coverage **C.;**

2.  Damages under General Liability Coverage **A.,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

3.  Damages under General Liability Coverage **B.;** and

4.  Damages under Professional Liability Coverage.

When we have used up the Combined Maximum Aggregate Limit described herein by paying damages, medical expenses, settlements or judgments, we will have no further duty to defend any claims or "suits" under the above coverages, whether pending at that time or started afterwards.

**II.  General Liability Provisions**

**A.**  For all sums under the Commercial General Liability Coverage Form which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section I—Coverage **A.,** and

SHS-3 (6-17)                                Page 1 of 3                                **Nationwide®**

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

for all medical expenses caused by accidents under Section I—Coverage **C.**, which can be attributed only to operations at a single covered "location":

1. Subject to the provisions of **I.** Combined Maximum Aggregate Limit above, a separate General Aggregate Per Location Limit applies to each covered "location," and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

2. The General Aggregate Per Location Limit is the most we will pay for the sum of all damages under Coverage **A.**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard," and for medical expenses under Coverage **C.** regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought;

   c. Persons or organizations making claims or bringing "suits"; or

   d. Policies involved.

3. Any payments made under Coverage **A.** for damages or under Coverage **C.** for medical expenses shall reduce the General Aggregate Per Location Limit for that covered "location" and shall reduce the Combined Maximum Aggregate Limit. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other General Aggregate Per Location Limit for any other covered "location."

4. The limits shown in the Declarations for Each Occurrence, Damage to Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable General Aggregate Per Location Limit.

**B.** For all sums under the Commercial General Liability Coverage Form which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section I—Coverage **A.**, and for all medical expenses caused by accidents under Section I—Coverage **C.**, which cannot be attributed only to operations at a single covered "location":

1. Any payments made under Coverage **A.** for damages or under Coverage **C.** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable and shall reduce the Combined Maximum Aggregate Limit; and

2. Such payments shall not reduce any General Aggregate Per Location Limit;

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit, the General Aggregate per Location Limit nor the Combined Maximum Aggregate Limit.

**III. Professional Liability Provisions**

**A.** For all sums under the Professional Liability coverage part which the insured becomes legally obligated to pay as "damages" as a result of a "claim" arising out of an "incident" to which the Professional Liability Coverage Part applies, which can be attributed only to operations at a single covered "insured location":



EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

1. Subject to the provisions of **I. Combined Maximum Aggregate Limit** above, a separate Professional Liability Aggregate Per Location Limit applies to each covered "location," and that limit is equal to the amount of the Professional Liability Aggregate Limit shown in the Declarations.

2. The Professional Liability Aggregate Per Location Limit is the most we will pay for the sum of all damages under the Professional Liability coverage part regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought;

   c. Persons or organizations making claims or bringing "suits"; or

   d. Policies involved.

3. Any payments made under the Professional Liability coverage part for "damages" shall reduce the Professional Liability Aggregate Per Location Limit for that designated covered "insured location" and shall reduce the Combined Maximum Aggregate Limit. Such payments shall not reduce the Professional Liability Aggregate Limit shown in the Declarations nor shall they reduce any other Professional Liability Aggregate Per Location Limit for any other covered "insured location."

4. The limit shown in the Declarations for the Professional Liability Each Claim Limit continues to apply. However, instead of being subject to the Professional Liability Aggregate Limit shown in the Declarations, such limit will be subject to the applicable Professional Liability Aggregate Per Location Limit.

B. For all sums under the Professional Liability coverage part which the insured becomes legally obligated to pay as "damages" as a result of a "claim" arising out of an "incident" to which the Professional Liability Coverage Part applies but cannot be attributed only to operations at a single covered "insured location":

1. Any payments made under the Professional Liability coverage part for "damages" shall reduce the amount available under the Professional Liability Aggregate Limit and the Combined Maximum Aggregate Limit; and

2. Such payments shall not reduce any Professional Liability Aggregate Per Location Limit.

## IV. Common Provisions

A. For purposes of this endorsement, the following definition is added:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad. Location also means "insured location" as defined in the Professional Liability coverage form.

B. The provisions of Section III—Limits of Insurance of the Commercial General Liability Coverage Form and Section III—Limits of Insurance—Professional Liability coverage form not otherwise modified by this endorsement shall continue to apply as stipulated.

All other terms and conditions of this Policy remain unchanged.

---

AUTHORIZED REPRESENTATIVE                                    DATE



EXHIBIT 1

Underwritten by Scottsdale Insurance Company

**ENDORSEMENT NO. _____**

FILED DATE: 6/3/2020 12:37 PM 2020CH04433

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| SHS0000061 | 03/01/2018 | Major Hospital DBA SM Healthcare, LLC | 05409 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SELF-INSURED RETENTION LIABILITY INSURANCE ENDORSEMENT

In consideration of the premium paid, it is agreed that this endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**SENIOR CARE PROFESSIONAL LIABILITY COVERAGE FORM**

This policy provides coverage under the coverage forms designated with an "x" below. In the event that coverage is granted under more than one coverage form, the terms in quotation marks will have the meaning set forth in the applicable coverage form.

❑ Commercial General Liability

❑ Professional Liability

❑ Employee Benefit Liability

❑ Products-Completed Operations Hazard

### SCHEDULE

| Coverage | Amount and Basis of SIR | |
|---|---|---|
| Commercial General Liability | $ 50,000 Dyer Facility | Per Occurrence |
| Professional Liability | $ 50,000 Dyher Facility | Per Claim |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A. SIR Applicable to the Commercial General Liability Coverage Form**

1. Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay "damages" and "defense costs" on your behalf applies only to the amount of "damages" and "defense costs" in excess of any SIR amount stated in the Schedule above as applicable to such coverages.

   The Per Occurrence SIR amount stated in the Schedule above applies to all "damages" because of:

   **a.** "Bodily injury";

   **b.** "Property damage"; or

   **c.** "Bodily injury" and "property damage" combined;

   as the result of any one "occurrence," regardless of the number of persons or organizations who

Nationwide®

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM 2020CH04433

sustain "damages" because of that "occurrence."

2. Our obligation under the Personal and Advertising Injury Liability Coverage to pay "damages" on your behalf and "defense costs" applies only to the amount of "damages" and "defense costs" in excess of any SIR amounts stated in the Schedule above as applicable to such coverage. The Per Occurrence SIR amount stated in the Schedule above applies to all "damages" and "defense costs" because of "personal and advertising injury" as the result of any one offense, regardless of the number of persons or organizations who sustain "damages" because of that offense.

**B. SIR Applicable to the Senior Living Communities Professional Liability Coverage Form**

Our obligation under the Professional Liability Coverage to pay "damages" and "claims expenses" on your behalf applies only to the amount of "damages" and "claims expenses" in excess of any SIR amount stated in the Schedule above as applicable to such coverage.

The Per Claim SIR amount stated in the Schedule above applies to all "damages" and "claims expenses" as the result of any "incident," regardless of the number of persons or organizations who sustain "damages" because of that "incident."

**C. Combined SIR**

When two or more of the coverages shown in the Schedule above apply to any one occurrence, offense, "claim" or "suit," only one SIR shall apply to the combination of coverages. The applicable SIR shall then be the largest single SIR shown in the Schedule above.

**D. Additional Provisions**

1. We shall pay damages in excess of the Self-Insured Retention amount stated above. The "first named insured" is obligated to pay and is responsible for payment of damages and defense costs within the applicable Self-Insured Retention.

2. Our rights duties with respect to the defense and settlement of claims apply only after damages and/or defense costs for a medical incident or an occurrence, whichever is applicable, exceed the applicable Self-Insured Retention amount shown in the schedule above and only for that portion of the loss which is excess of such Self-Insured Retention. Your bankruptcy, insolvency, failure or inability to pay any amount within the Self-Insured Retention shall not increase our liability under this policy

3. The Self-Insured Retention Each Incident amount is included within and reduces the Limits of Insurance of the Professional Liability Coverage Part and the Self-Insured Retention Each Occurrence amount is included within and reduces the Limits of Insurance of the General Liability Coverage Part. Each Occurrence amount is included within and reduces the Limits of Insurance of the General Liability Coverage Part.

4. The "first named insured" shall maintain a claims handling service approved by us to handle claims or suits within the Self-Insured Retention.

5. For purposes of this endorsement, "defense costs" means and is limited to reasonable and necessary attorney fees and expenses, court costs, and the cost of appeal bonds. "Defense costs" do not include inside attorney fees, salaries, wages, remuneration, overhead or benefit expenses associated with any insured.

6. For purpose of this endorsement, "claims expenses" shall have the meaning set forth in the Professional Liability Coverage Form.

All other terms and conditions of this Policy remain unchanged.

---

AUTHORIZED REPRESENTATIVE                    DATE



EXHIBIT 1

 Nationwide®

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

Underwritten by: Scottsdale Insurance Company
Home Office: One Nationwide Plaza ▪ Columbus, Ohio 43215
Administrative Office: 8877 North Gainey Center Drive ▪ Scottsdale, Arizona 85258
1-800-423-7675▪ A Stock Company

In Witness Whereof, the Company has caused this policy to be executed and attested.

Secretary                                    President

The information contained herein replaces any similar information contained elsewhere in the policy.

UTS-COVPG (1-16)

EXHIBIT 1



FILED DATE: 6/3/2020 12:37 PM   2020CH04433

Underwritten by: Scottsdale Insurance Company
Home Office: One Nationwide Plaza ▪ Columbus, Ohio 43215
Administrative Office: 8877 North Gainey Center Drive ▪ Scottsdale, Arizona 85258
1-800-423-7675▪ A Stock Company

In Witness Whereof, the Company has caused this policy to be executed and attested.

Secretary                                            President

The information contained herein replaces any similar information contained elsewhere in the policy.

UTS-COVPG (1-16)

EXHIBIT 1

Return Date: No return date scheduled
Hearing Date: 10/1/2020 9:30 AM - 9:30 AM
Courtroom Number: 2305
Location: District 1 Court
~~Holly Turner~~
~~Cook County, IL~~

FILED
6/3/2020 12:37 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH04433

9382931

FILED DATE: 6/3/2020 12:37 PM  2020CH04433

| | |
|---|---|
| **From:** | Holly Turner |
| **Sent:** | Saturday, February 23, 2019 9:50 PM |
| **To:** | 'mlsreportaloss@nationwide.com'; Inesta, Michelle R |
| **Cc:** | Claims Group; Holly Turner |
| **Subject:** | RE: Policy SHS0000061 - Dyer (Dec 2018) |
| **Attachments:** | Dyer Dec 2018.pdf |

Attached are Dyer's Dec 2018 reports. These are sorted by resident names - the event or incident is described for each reporting, as well as date and time. The witness/person with most info is listed as creator. If any additional info is needed, please reach out.

Please note that <u>these should be considered incidents only, and not set up as claims</u>. However, to be kept on file in the event that this incident should develop into a claim in the future to trigger coverage.

Feel free to contact Holly Turner at hturner@extendedcarellc.com or 708-476-4813 with any questions you may have regarding this matter. Thank you.

Holly Turner
Cell (708) 476-4813
Fax (866) 223-1638

Ex 2

1

EXHIBIT 1

DYER NURSING AND REHABILITATION CENTER

## Facility Event Summary Report - 12/1/2018 to 12/31/2018

**Resident Name:** ANDERSON, CHARLES     **MR#:** 6163                    **U/R/B:** Discharge-Return Not Anticipated

| Date/Time | Event Type | Creator | STAT | Status | Open/Closed | Closed Date/By | e-Signed |
|---|---|---|---|---|---|---|---|
| 12/24/2018 08:38PM | Fall Event/(Head to Toe) Full Body & Pain | Annitra Middlebrooks LPN | No | Completed | Closed | 01/04/2019 Sharon Tabor RN | |

**Description:** Fall in room

**Notifications:**

| | | | | | |
|---|---|---|---|---|---|
| Attending Faxed: | No | | | | |
| Physician Notified: | Yes | | Date/Time: | 12/24/2018 07:53PM | |
| Note: | | | | | |
| Family Notified: | Yes | | Date/Time: | 12/24/2018 08:04PM | |
| Note: | | | | | |
| Care Plan Reviewed: | Yes | | Date/Time: | 12/28/2018 02:39PM | |
| Note: | | | | | |
| **Evaluation:** | resident in hospital. | | | | |

| Date/Time | Event Type | Creator | STAT | Status | Open/Closed | Closed Date/By | e-Signed |
|---|---|---|---|---|---|---|---|
| 12/16/2018 05:15AM | Skin Tear/Laceration | Patricia Pelot RN | No | Completed | Closed | 01/04/2019 Sharon Tabor RN | |

**Description:** Skin tear to RFA 1 cm x3 cm

**Notifications:**

| | | | | | |
|---|---|---|---|---|---|
| Attending Faxed: | No | | | | |
| Physician Notified: | Yes | | Date/Time: | 12/16/2018 08:40AM | |
| Note: | | | | | |
| Family Notified: | Yes | | Date/Time: | 12/16/2018 08:45AM | |
| Note: | | | | | |
| Care Plan Reviewed: | No | | Date/Time: | | |
| Note: | | | | | |
| **Evaluation:** | resident in hospital. | | | | |

FILED DATE: 6/3/2020 12:37 PM    2020CH04433

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

## Holly Turner

| | |
|---|---|
| **From:** | Holly Turner |
| **Sent:** | Saturday, February 23, 2019 9:49 PM |
| **To:** | 'mlsreportaloss@nationwide.com'; Inesta, Michelle R |
| **Cc:** | Claims Group; Holly Turner |
| **Subject:** | RE: Policy SHS0000061 - Dyer (Nov 2018) |
| **Attachments:** | Dyer Nov 2018.pdf |

Attached are Dyer's Nov 2018 reports. These are sorted by resident names - the event or incident is described for each reporting, as well as date and time. The witness/person with most info is listed as creator. If any additional info is needed, please reach out.

Please note that these should be considered incidents only, and not set up as claims. However, to be kept on file in the event that this incident should develop into a claim in the future to trigger coverage.

Feel free to contact Holly Turner at hturner@extendedcarellc.com or 708-476-4813 with any questions you may have regarding this matter. Thank you.

Holly Turner
Cell (708) 476-4813
Fax (866) 223-1638



1

EXHIBIT 1

DYER NURSING AND REHABILITATION CENTER

## Facility Event Summary Report - 11/1/2018 to 11/30/2018

**Resident Name:** ANDERSON, CHARLES     **MR#:** 6163     **U/R/B:** Discharge-Return Not Anticipated

| Date/Time | Event Type | Creator | STAT | Status | Open/Closed | Closed Date/By | Signed |
|---|---|---|---|---|---|---|---|
| 11/25/2018 05:44PM | Skin Tear/Laceration | Camille Blackburn RN | No | Completed | Closed | 01/04/2019 | Sharon Tabor RN |

**Description:** Skin tear x2 R shin

**Notifications:**

| | | | | |
|---|---|---|---|---|
| Attending Faxed: | No | | | |
| Physician Notified: | Yes | | Date/Time: | 11/25/2018 05:52PM |
| Note: | | | | |
| Family Notified: | Yes | | Date/Time: | 11/25/2018 05:52PM |
| Note: | | | | |
| Care Plan Reviewed: | Yes | | Date/Time: | 11/26/2018 11:09AM |
| Note: | | | | |
| **Evaluation:** | resident in hospital. | | | |

| Date/Time | Event Type | Creator | STAT | Status | Open/Closed | Closed Date/By | Signed |
|---|---|---|---|---|---|---|---|
| 11/05/2018 09:45AM | Bruise | LaToya King LPN | No | Completed | Closed | 01/04/2019 | Sharon Tabor RN |

**Description:** Red Bruise to right thumb and right inner arm

**Notifications:**

| | | | | |
|---|---|---|---|---|
| Attending Faxed: | No | | | |
| Physician Notified: | Yes | | Date/Time: | 11/05/2018 10:05AM |
| Note: | | | | |
| Family Notified: | Yes | | Date/Time: | 11/05/2018 10:15AM |
| Note: | | | | |
| Care Plan Reviewed: | Yes | | Date/Time: | 11/05/2018 02:25PM |
| Note: | | | | |
| **Evaluation:** | resident in hospital. | | | |

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

Redacted

EXHIBIT 1

**Holly Turner**

| | |
|---|---|
| **From:** | Holly Turner |
| **Sent:** | Saturday, February 23, 2019 9:38 PM |
| **To:** | 'mlsreportaloss@nationwide.com'; Inesta, Michelle R |
| **Cc:** | Claims Group; Holly Turner |
| **Subject:** | Policy SHS0000061 - Dyer (June 2018) |
| **Attachments:** | Dyer June 2018.pdf |

Attached are Dyer's June 2018 reports. These are sorted by resident names - the event or incident is described for each reporting, as well as date and time. The witness/person with most info is listed as creator. If any additional info is needed, please reach out.

Please note that these should be considered incidents only, and not set up as claims. However, to be kept on file in the event that this incident should develop into a claim in the future to trigger coverage.

Feel free to contact Holly Turner at hturner@extendedcarellc.com or 708-476-4813 with any questions you may have regarding this matter. Thank you.


Holly Turner
Cell (708) 476-4813
Fax (866) 223-1638

1

$Ex\ 4$

EXHIBIT 1

DYER NURSING AND REHABILITATION CENTER

## Facility Event Summary Report - 06/1/2018 to 06/30/2018

| **Resident Name:** ANDERSON, CHARLES | **MR#:** 6163 | **U/R/B:** Discharge-Return Not Anticipated |
|---|---|---|

| Date/Time | Event Type | Creator | STAT | Status | Open/Closed | Closed Date/By | e-Signed |
|---|---|---|---|---|---|---|---|
| 06/25/2018 08:10AM | Skin Tear/Laceration | LaToya King LPN | No | Completed | Closed | 01/04/2019 Sharon Tabor RN | |
| **Description:** skin tear to left knee | | | | | | | |

**Notifications:**

| | | | | |
|---|---|---|---|---|
| Attending Faxed: | No | | | |
| Physician Notified: | Yes | | Date/Time: | 06/25/2018 08:45AM |
| Note: | | | | |
| Family Notified: | Yes | | Date/Time: | 06/25/2018 09:11AM |
| Note: | | | | |
| Care Plan Reviewed: | Yes | | Date/Time: | 06/26/2018 01:27PM |
| Note: | | | | |
| **Evaluation:** | resident in hospital. | | | |

| Date/Time | Event Type | Creator | STAT | Status | Open/Closed | Closed Date/By | e-Signed |
|---|---|---|---|---|---|---|---|
| 06/03/2018 11:00AM | Skin Tear/Laceration | Nia Johnson LPN | No | Completed | Closed | 07/30/2018 Jeffrey Tolley | |
| **Description:** scratch | | | | | | | |

**Notifications:**

| | | | | |
|---|---|---|---|---|
| Attending Faxed: | No | | | |
| Physician Notified: | Yes | | Date/Time: | 06/03/2018 11:15AM |
| Note: | | | | |
| Family Notified: | Yes | | Date/Time: | 06/03/2018 11:20AM |
| Note: | | | | |
| Care Plan Reviewed: | No | | Date/Time: | |
| Note: | | | | |
| **Evaluation:** | closed | | | |

Redacted

FILED DATE: 6/3/2020 12:37 PM 2020CH04433

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433



# STATE OF INDIANA

### ERIC J. HOLCOMB, GOVERNOR

**Indiana Department of Insurance**
Stephen W. Robertson, Commissioner
311 W. Washington Street, Suite 103
Indianapolis, Indiana 46204-2787
Telephone: (317) 232-2385
Fax: (317) 232-5251
Website: in.gov/idoi

March 16, 2020

Major Hospital Dba Dyer Nursing & Rebhabilitation Center,
601 Sheffield Avenue
Dyer, IN 46311

RE:   Terry L. Anderson et al v. Major Hospital dba Dyer Nursing and
Rehabilitation Center

Claim#      1020758

Dear :

Pursuant to I.C. 34-18-9-1, we are forwarding you a copy of the enclosed Complaint by Terry L.
Anderson.  A review of our records indicate that for the time period of the alleged malpractice and/or
the filing of the claim, you qualified under the Indiana Medical Malpractice Act, I.C. 34-18-1-1, *et. seq.*,
by filing proof of financial responsibility and paying the required surcharge.

Please note that, pursuant to I.C. 34-18-10-2, not earlier than twenty days after the filing of a proposed
complaint either party may request the formation of a Medical Review Panel by registered or certified
mail upon all parties and the Commissioner.

Also, I.C. 34-18-9-3 requires the reporting of all claims settled or adjudicated to final judgment by the
plaintiff's attorney and by the health care provider or the health care provider's insurer or risk manager
within sixty (60) days following final disposition of the claim.

Receipt of this complaint is by copy of this letter communicated to
Kelly Ann Sheets
Theodoros & Rooth, PC
8750 Broadway
Suite A
Merrillville, IN 46410

INDIANA PATIENT'S COMPENSATION FUND

Enclosure

CC:  Midwest Insurance Group, Inc., a Risk Retention Gr

EX 5

ACCREDITED BY THE NATIONAL ASSOCIATION OF INSURANCE COMMISSIONERS

AGENCY SERVICES    COMPANY COMPLIANCE    CONSUMER SERVICES    FINANCIAL SERVICES    MEDICAL MALPRACTICE    COMPANY RECORDS    STATE HEALTH INSURANCE PROGRAM

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM 2020CH04433

**STATE OF INDIANA**
**BEFORE THE DEPARTMENT OF INSURANCE**

FILED

FEB 2 0 2020

State of Indiana
Department of Insurance

TERRY L. ANDERSON as Personal )
Representative of the Estate of )
CHARLES L. ANDERSON, Deceased, )
)
    Plaintiff, )
) Claim No.:
v. )
)
MAJOR HOSPITAL, d/b/a, DYER )
NURSING AND REHABILITATION )
CENTER, )
)
    Defendants. )

<u>PROPOSED COMPLAINT FOR MEDICAL MALPRACTICE</u>

<u>COUNT I</u>

*COMES NOW*, the plaintiff, *Terry L. Anderson, as Personal Representative of the Estate*
*of Charles L. Anderson, Deceased* (the "Decedent"), and for his cause of action against the
defendant, **Major Hospital, d/b/a Dyer Nursing and Rehabilitation Center** ("Center"), alleges
and says as follows:

    1.    At all times relevant hereto, **Charles L. Anderson ("Decedent")** was a "patient"
pursuant to I.C. 34-18-1-1, *et seq*.

    2.    At all times relevant hereto, the defendant was a health care provider "qualified"
pursuant to I.C. 34-18-1-1, *et seq*.

    3.    At all times relevant hereto, the defendant was a duly licensed healthcare facility
operating under the laws of the State of Indiana, located in Dyer, Lake County, Indiana.

1

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

4.     Beginning on or about April 15, 2018 and continuing thereafter, the defendant's skilled agents, apparent agents and employees undertook the care and treatment of the Decedent at its facility in Dyer, Indiana.

5.     In caring for and treating the Decedent, the defendant's skilled agents, apparent agents and employees, while acting within the scope of said agency, apparent agency and employment relationship, breached the applicable standards of care, proximately causing the Decedent's death on January 12, 2019.

6.     The Decedent was the natural parent of the plaintiff.

7.     At the time of his death, the Decedent was an "adult person" as defined by I.C. 34-23-1-2.

8.     At all times relevant hereto, the **Decedent's** adult children, **Terry L. Anderson, Garold Anderson and Nancy Mathews,** had genuine, ongoing, and substantial relationships with the **Decedent**.

9.     As a further direct and proximate result of said acts and omissions on the part of the defendant, said adult children lost the love and companionship of the Decedent, and incurred reasonable medical, hospital, funeral and burial expenses and all other damages allowed pursuant to I.C. 34-23-1-2.

10.    On February 18, 2020, the plaintiff was appointed Personal Representative of the Estate of Charles L. Anderson, Deceased, by the Lake County Circuit Court under Cause No. 45C01-2002-ES-000031.   The Order is attached hereto, incorporated herein by reference and labeled Exhibit "A".

11.    As an alternative to a claim for damages alleged above pursuant to I.C. 34-23-1-2, the plaintiff alleges that, as a direct and proximate result of said acts of negligence on the part of

2

EXHIBIT 1

the defendant, the Decedent suffered injuries, great pain, emotional distress, and mental trauma, and incurred reasonable medical and related expenses, and all other damages allowable under I.C. 34-9-3-4.

12. The plaintiff has incurred and will continue to incur attorneys' fees relative to the prosecution of this action and asserts a claim for such fees.

*WHEREFORE*, the plaintiff prays for an award of damages against the defendant, **Major Hospital, d/b/a Dyer Nursing and Rehabilitation Center**, as are reasonable in the premises, attorneys' fees, the costs of this action, pre-judgment interest, and for all other just and proper relief in the premises.

Respectfully submitted,

Kelly A. Sheets, #26628-64-A
William A. Theodoros, #32173-49
Attorneys for the Plaintiffs
**THEODOROS & ROOTH, P.C.**
8750 Broadway, Ste. A
Merrillville, IN 46410
(219) 769-6393

3

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

## COURT DESIGNATION

*COMES NOW* the plaintiff, by counsel, and designate the Lake Circuit/Superior Court,

sitting in Lake County, Indiana, as the Court to hear the plaintiffs' Petition for Excess Damages

from the Patient's Compensation Fund.

Respectfully submitted,

Kelly A. Sheets, #26628-64-A
William A. Theodoros, #32173-49
Attorneys for the Plaintiffs
**THEODOROS & ROOTH, P.C.**
8750 Broadway, Ste. A
Merrillville, IN 46410
(219) 769-6393

## JURY DEMAND

*COMES NOW* the plaintiff, by counsel, and demands trial by jury.

Respectfully submitted,

Kelly A. Sheets, #26628-64-A
William A. Theodoros, #32173-49
Attorneys for the Plaintiffs
**THEODOROS & ROOTH, P.C.**
8750 Broadway, Ste. A
Merrillville, IN 46410
(219) 769-6393

4

EXHIBIT 1

45C01-2002-ES-000031

STATE OF INDIANA ) IN THE LAKE CIRCUIT COURT
                ) SS
COUNTY OF LAKE ) SITTING AT CROWN POINT, INDIANA

IN THE MATTER OF: THE ESTATE OF )
CHARLES L. ANDERSON, DECEASED. )

**Filed in Open Court**
February 18, 2020
LAKE CIRCUIT COURT
MS

## ORDER APPOINTING PERSONAL REPRESENTATIVE FOR THE SOLE PURPOSE OF COLLECTING DAMAGES FOR WRONGFUL DEATH OR PERSONAL INJURY

       Comes now, Terry Anderson, and files his Verified Petition for Letters of Administration for the Sole Purpose of Collecting Damages for Wrongful Death and/or Personal Injury, which petition is on file with the Court and a part of the Court's record.

       And the Court, having examined said petition and being otherwise duly informed in the premises, now finds as follows:

     1.    That Charles L. Anderson ("decedent") died on January 12, 2019, while domiciled in Lake County, Indiana.

     2.    That the decedent died intestate, and according to the petition filed, the heirs of the decedent are as follows:

              Terry Anderson
              9432 Hook Street
              Highland IN 46322
              Adult Son
              DOB: 4/17/1948

              Garold Anderson
              1103 Cambridge Ln.
              Dyer, IN 46311
              Adult Son
              DOB: 5/28/1949

              Nancy Mathews
              31 Mavis Dr.
              Ethridge, TN 38456
              Adult Daughter
              DOB: 8/22/1954

FILED DATE: 6/3/2020 12:37 PM 2020CH04433



EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM    2020CH04433

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** by the Court that Terry Anderson should be appointed personal representative of the Estate of Charles L. Anderson, deceased, for the sole purpose of brining an action concerning the decedent's alleged wrongful death and/or injuries sustained by the decedent prior to his death.

That upon Terry Anderson taking an oath and with no bond required, the Clerk of the Circuit Court of Lake County shall issue Letters of Administration to Terry Anderson.

That the letters issued by the clerk shall reflect that the administration is for the sole purpose of collecting damages for the wrongful death or injuries of the decedent.

ALL OF WHICH IS ORDERED this 18th day of ___February___, 2020.

PROBATE COMMISSIONER MS
LAKE CIRCUIT COURT

JUDGE, LAKE CIRCUIT COURT

EXHIBIT 1



**Nationwide®**
is on your side

7 World Trade Center
250 Greenwich Street
37th Floor
New York, NY 10007

April 3, 2020

**Via Certified Mail Return Receipt Requested**
**Via Electronic Mail:** (hturner@extendedcarellc.com)

Major Hospital
d/b/a SM Healthcare LLC
101 W 87th Avenue
Merrillville, IN 46410
Attn: Holly Turner

RE:  **CLAIM NO.:**   01949465
     **INSURER:**    **Scottsdale Insurance Company**
     **POLICY NO.:** **SHS0000061**
     **INSURED:**    **Major Hospital d/b/a SM Healthcare LLC**
     **CLAIMANT:**   **Charles Anderson**

Dear Ms. Turner:

We are directing this letter to you as the authorized representative of Major Hospital DBA SM Healthcare LLC. ("SM Healthcare" or "insured"). To the extent that you are not acting on SM Healthcare's behalf for insurance coverage purposes, we ask that you forward a copy of this letter to the appropriate insurance representative(s) and forward to us the correct contact information.

Nationwide, on behalf of Scottsdale Insurance Company ("Scottsdale" or "Insurer") acknowledges receipt of a Complaint styled *Terry L. Anderson as Personal Representative of the Estate of Charles L. Anderson, Deceased v. Major Hospital, d/b/a, Dyer Nursing and Rehabilitation Center* ("the Complaint"). This matter has been submitted for insurance coverage. Please also allow this correspondence to outline certain policy provisions that impact coverage for this matter.

We have reviewed the provisions of Policy No. SHS0000061 (the "Policy") together with the documents you have provided and have determined that there is no coverage under the Policy for this matter. Scottsdale, therefore, will not provide either a defense or indemnification for this matter. As such, the insured should take the necessary steps to protect its interests with respect to this matter.

As noted above, the materials received include the Complaint dated February 20, 2020 stating that Charles Anderson ("Claimant") was a resident at Dyer Nursing and Healthcare Center from April 15, 2018 through his death on January 12, 2019. The complaint alleges Dyer Nursing and Healthcare breached the applicable standards of care, causing the decedent to suffer injuries, great pain, emotional distress, and mental trauma which proximately causing the decedent's death. Based on these and other allegations, the Complaint asserts the causes of action for negligence and medical malpractice.

This matter was noticed under Scottsdale Policy No. SHS0000061, bound for the "policy period" March 1, 2018 through March 1, 2019. The Policy includes Professional Liability, General Liability and Employee Benefits Liability coverage parts. The potentially applicable coverage part is the Professional Liability coverage part ("PL Coverage Part").

*Ex 6*

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM  2020CH04433

FILED DATE: 6/3/2020 12:37 PM    2020CH04433

Major Hospital
d/b/a SM Healthcare LLC
April 3, 2020
Page 2

First, your attention is invited to SECTION I – Coverage in your SENIOR CARE PROFESSIONAL LIABILITY COVERAGE FORM – CLAIMS MADE, where you will find the following Insuring Agreement for both polices:

A.  We will pay up to the applicable Limit of Liability set forth in Item 3. of the Declarations on behalf of the "insured" any "damages" that the "insured" becomes legally obligated to pay as a result of a "claim" arising out of an "incident" happening on or after the retroactive date shown in the Declarations and before the end of the "policy period" provided that:
    1.  Such "claim" is first made against the "insured" during the "policy period";
    2.  The "claim" is reported to us in accordance with the provisions of SECTION VI of this coverage form; and
    3.  Prior to the effective date of this Policy:
        a.      No "notice manager" knew or should have known of a "claim" or a potential "claim";
        b.      No "insured" had given notice to a prior insurer of a "claim," "related claim" or potential "claim"; or
        c.  No "insured" had given notice to a prior insurer of an "incident" or any "related incident.: (Emphasis added).

Section II. of the Policy provides the following relevant definitions:

"Claim" means, in part, a civil proceeding.

"Damages" mean judgments, awards and settlements (provided any settlement is made with our prior written consent) including punitive or exemplary damages if insurable under the applicable law most favorable to the "insured" that an "insured" is legally obligated to pay on account of a covered "claim."

"Incident" means an act, error or omission in the providing of "professional services."

"Professional services" means:
    1.  The performance of:
        a.  "Long-term care administrative services";
        b.  "Healthcare services"; or
        c.   "Beauticians and barbers services"; or
    2.  Violation of the "rights of residents."

    "Professional services" do not include medical treatment or "healthcare services" performed by any person in their capacity as an intern, medical resident, physician, surgeon, dentist, psychiatrist, podiatrist, chiropractor or physicians' assistant, except for "emergency medical treatment." This shall not apply to the "named insured" for its vicarious liability arising out of the medical treatment or "healthcare services" performed for your "residents" by any healthcare provider listed above.

The Complaint constitutes a claim for damages arising from an incident. As the Complaint was filed on February 20, 2020 and served on Dyer Nursing and Healthcare Center on March 16, 2020, the claim was not first made against the "insured" during the "policy period," March 1, 2018 through March 1, 2019, for Policy No. SHS0000061. Therefore, the insuring agreement for Policy No. SHS0000061 has not been triggered. As such, Scottsdale will neither defend nor indemnify SM Healthcare for this matter and SM Healthcare should take the necessary steps to protect its interests.

EXHIBIT 1

FILED DATE: 6/3/2020 12:37 PM   2020CH04433

Major Hospital
d/b/a SM Healthcare LLC
April 3, 2020
Page 3

Scottsdale's coverage position for this matter is premised upon the allegations asserted and presently known facts. If you have any additional information you believe should be factored into our coverage analysis for this matter, please feel free to provide us with such information and we will review it for its impact on coverage.

Scottsdale expressly reserves all rights and defenses under the Policy, at law and/or in equity, whether or not specifically referenced herein to deny coverage upon any terms, conditions, exclusions, endorsements and other provisions of the Policy and any underlying policy, including statements, declarations and omissions made in connection with the application(s), therefore as may apply. No present or subsequent action taken by Scottsdale is to be construed as a waiver of any position set forth in this letter or any rights otherwise available to it pursuant to the Policy, at law, and/or in equity.

Please contact me should you have any questions concerning the coverage under this Policy or other matters in this letter.

Very truly yours,

Reid Packer, Esq.
Claim Specialist
Nationwide Management Liability & Specialty
7 World Trade Center, 37th Floor
New York, New York 10007
Direct Dial: (212) 817-4048
Packer2@nationwide.com

cc:   **Via Electronic Mail:** (jmatson@propraxisins.com)
      CRC Group
      6200 South Syracuse Way, Suite 1000
      Greenwood Village, CO 80111
      Attn: Jennifer Matson

EXHIBIT 1