THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EXTENDED CARE CLINICAL, LLC, et al.,<br>   *Plaintiffs*,<br><br>  v.<br><br>SCOTTSDALE INSURANCE COMPANY,<br><br>   *Defendant*. | No. 20 C 7132<br><br>Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Extended Care Clinical, LLC, Extended Care Consulting, LLC, Dyer Nursing and Rehabilitation Center, LLC, and Major Hospital sued Defendant Scottsdale Insurance Company ("Scottsdale") for declaratory judgment and breach of an insurance policy issued to Major Hospital d/b/a SM Healthcare ("SM Healthcare"). Plaintiffs initiated suit in the Circuit Court of Cook County. Scottsdale removed the action to this Court based on diversity jurisdiction and now moves to transfer the case to the Northern District of Indiana pursuant to 28 U.S.C. § 1404(a). For the following reasons, Scottsdale's motion to transfer venue [7] is denied.

**BACKGROUND**

The following facts are taken from Plaintiffs' complaint and the exhibits attached thereto and are accepted as true for purposes of this motion. *See e.g., Bettcher Indus. v. Suhner Turbo Trim*, No. 13 C 9000, 2014 WL 2937063, at *1 (N.D. Ill. June 30, 2014).

**I. The Scottsdale Insurance Policy**

SM Healthcare is a healthcare facility that operates the Dyer Nursing & Rehabilitation Center ("Dyer"). (Dkt. 1-1 at 6). SM Healthcare and Dyer are incorporated and located in Indiana.

1

(*Id*.) Dyer entered into a service agreement with Extended Care Clinical, LLC and Extended Care Consulting, LLC ("the EECs") under which the ECCs would obtain insurance coverage for Dyer. (*Id*.) The ECCs are healthcare consulting companies registered as LLCs in Illinois with their principal place of business in Evanston, Illinois. (*Id*.) The ECCs contacted an insurance broker, Worthy Insurance Group ("Worthy"), to obtain liability insurance for themselves and Dyer in connection with operations at the nursing facility. (*Id*. at 6–7). Worthy's principal place of business is in Skokie, Illinois. (*Id*. at 7). From their offices in Skokie, Worthy procured a liability insurance policy from Scottsdale (the "Policy"). (*Id*.) Scottsdale is an insurance company registered in Ohio and with its principal place of business in Arizona. (*Id*.) (Dkt. 1 at ¶ 8). Scottsdale issues policies in Illinois, among other locations. (Dkt. 1-1 at 7).

The Policy is effective from March 1, 2018 through March 1, 2019 and lists SM Healthcare and the ECCs as the insureds, with SM Healthcare as the Named Insured. (*Id*. at 7, 16). It is a "claims made and reported policy", meaning it provides coverage only for those claims reported to Scottsdale during the policy period and in accordance with the reporting requirements in the Policy. (*Id*. at 7). Potential claims that result in actual claims or lawsuits after the policy period are covered so long as they are adequately reported during the policy period. (*Id*. at 7–8).

II.     **The Underlying Action**

On December 24, 2018, Charles Anderson, a resident at Dyer, sustained a fall and went to the emergency room. (*Id*. at 9). Anderson passed away on January 12, 2019. (*Id*. at 106). On February 23, 2019, the ECCs reported Anderson's fall via email to Scottsdale, along with other incidents involving Anderson, including lacerations and bruises Anderson sustained while at Dyer. (*Id*. at 9–13). On February 20, 2020, Anderson's estate brought a wrongful death suit in Indiana

state court against Dyer, alleging that Dyer breached applicable standards of care in caring for and treating Anderson. (*Id*. at 105).

### III. The Present Action

After receiving notice of the Anderson suit on March 23, 2020, Plaintiffs submitted the lawsuit to Scottsdale for defense and indemnification. (*Id*. at 13). On April 3, 2020, Scottsdale sent SM Healthcare a letter denying Plaintiffs' request for defense and indemnification on the basis that Dyer reported the lawsuit after the policy period had expired. (*Id*.) [1] On June 3, 2020, Plaintiffs filed suit in the Circuit Court of Cook County seeking declaratory judgment that Scottsdale is required under the Policy to defend against and indemnify Plaintiffs for the Anderson suit. (*Id*. at 105–07). Plaintiffs relatedly allege a breach of contract claim. (*Id*. at 107). Scottsdale removed the case to this Court on the basis of diversity jurisdiction and now moves to transfer it to the Northern District of Indiana. (Dkt. 1) (Dkt. 7).

## LEGAL STANDARD

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Section 1404(a) authorizes the Court to transfer matters based on a "'case-by-case consideration of convenience and fairness.'" *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). District courts are thus granted "a substantial degree of deference ... in deciding whether transfer is appropriate." *Id*. at 977–78. The Court may transfer a case under section 1404(a) when: "(1) venue is proper in the transferor district; (2) venue is proper in the

---

[1] The letter is addressed from Nationwide's offices in New York. (Dkt. 1-1 at 111–13). Although the parties do not explain the relationship between Scottsdale and Nationwide, they are treated as one for purposes of this motion.

transferee district; (3) the transfer will serve the convenience of the parties and witnesses; and (4) the transfer will serve the interests of justice." *Hanover Ins. Co. v. N. Bldg. Co.*, 891 F. Supp. 2d 1019, 1025 (N.D. Ill. 2012) (citation omitted). [2] Neither party disputes, and the Court agrees, that the first and second conditions are met. All that is disputed is whether the interests of convenience and justice require a transfer of venue to the Northern District of Indiana.

## DISCUSSION

### I. Convenience

"In evaluating the convenience of the parties and witnesses, courts weigh the following factors: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums." *Kjaer Weis v. Kimsaprincess Inc.*, 296 F. Supp. 3d 926, 930 (N.D. Ill. 2017) (quotations and citation omitted). Scottsdale "has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). Considering the five factors together, the Court concludes that Scottsdale has not met its burden.

#### i. Plaintiff's Choice of Forum & Situs of Material Events

A plaintiff's choice of forum is generally given substantial weight, particularly when it is the plaintiff's home forum. *See Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 803 (7th Cir.1997). A plaintiff entity is deemed to reside where it maintains its principal place of business. 28 U.S.C. § 1391(c)(2)). Here, two of the four Plaintiffs, the ECCs, maintain their principal places of business

---

[2] In their response brief, Plaintiffs apply the framework for venue transfer established by the Third Circuit. (Dkt. 17 at 5–6). The Court declines to apply this framework to the present motion, and instead utilizes the method established by courts in this district.

in this district. (Dkt. 1-1 at 6). Thus, Plaintiff's choice of forum is entitled to at least some deference.

The significance of plaintiff's choice, however, is significantly diminished "if the chosen forum has relatively weak connections with the operative facts giving rise to the claim." *Hartford Cas. Ins. Co. v. Topsail Sportswear, Inc.*, No. 10 C 1507, 2010 WL 2757556, at *3 (N.D. Ill. July 8, 2010) (quotations and citation omitted); *accord, e.g, Heston v. Equifax Credit Info. Serv.*, 03 C 2476, 2003 WL 22243986, at *1 (N.D.Ill. Sept.26, 2003) (citation omitted). The parties dispute the site of material events. Scottsdale argues that it is Indiana, where Anderson suffered harm and the site of the underlying wrongful death action, while Plaintiffs argue it is Illinois, where the Policy was brokered and issued. The instant lawsuit, however, has little to do with the merits of Anderson's wrongful death action or the negotiation and purchase of the Policy. Rather, the present dispute concerns Scottsdale's decision to deny coverage of the Anderson action based on its interpretation of the Policy. *See Evangelical Lutheran Church In Am. v. Atl. Mut. Ins. Co.*, 973 F. Supp. 820, 823 (N.D. Ill. 1997) (concluding site of events in declaratory judgment action regarding insurance coverage is where the decision to deny coverage occurred); *Commercial Union Ins. Co. v. Auto Europe, L.L.C.*, No. 01 C 6961, 2002 WL 47026, at *2 (N.D. Ill. Jan. 10, 2002) (same). This decision presumably took place at Scottsdale's offices in New York, as the letter informing SM Healthcare of the coverage denial was sent from Scottsdale's New York offices. (Dkt. 1-1 at 111–13). Also relevant to the present suit is the manner in which Plaintiffs gave notice of Anderson's potential claims to Scottsdale. These actions took place from ECCs' offices in Illinois. (*Id*. at 98–103). Because at least some of the actions at issue took place in Illinois, factors one and two weigh against transfer.

### ii. Ease of Access to Sources of Proof and Convenience of Witnesses

Scottsdale argues that documents and testimony related to the underlying wrongful death action are relevant to determining whether the Anderson suit arises from the potential claims reported to Scottsdale during the policy period. As these documents and witnesses are in Indiana, Scottsdale argues this factor weighs in favor of transfer. Given that the outcome of this case will be determined on the interpretation of the Policy, it is unlikely that the Court will need witness testimony or documents regarding the Anderson matter or the care Anderson received at Dyer beyond the Anderson complaint itself. *See Evangelical*, 973 F. Supp. at 823. To the extent these documents become relevant, Scottsdale does not contend they are unable to be readily transferred electronically or via other means. *See e.g., Brunswick Corp. v. Fitness 19 OH 237, LLC*, No. 19 C 1503, 2019 WL 2326000, at *3 (N.D. Ill. May 31, 2019) ("[T]he physical location of documents is less important than it once was given the advent of electronic discovery.").

Scottsdale also asserts that the individuals at SM Healthcare who received the coverage denial letter are in Indiana. The Court, however, will likely not need testimony regarding the circumstances of receiving that letter to determine whether Scottsdale is required to defend and indemnify against the Anderson action. The relevant question in this matter is whether Plaintiffs provided adequate notice of Anderson's potential claims to Scottsdale as defined by the Policy. Records pertaining to this issue are likely in possession of the ECC employees in *Illinois* who reported the potential claims to Scottsdale. (Dkt. 1-1 at 98–103). Although some of these documents are in Dyer's possession in Indiana, that documentation was also attached to the emails sent by the ECCs to Scottsdale. (*Id*.) Scottsdale further acknowledges that related documents are also in Worthy's possession in Illinois. (Dkt. 18 at 6). Thus, these factors weigh against transfer.

6

      **iii.    Convenience of the Parties**

The last factor is the convenience to the parties, under which "courts consider the residences and resources of the parties…." *Kjaer Weis*, 296 F. Supp. 3d at 934 (quotations and citation omitted). Neither party argues for or against transfer on the basis of a lack of resources. Considering the parties' residences, Plaintiffs ECCs are residents of Illinois. (Dkt. 1-1 at 6). While SM Healthcare and Dyer are not located in Illinois, Scottsdale represents that they are Illinois citizens. (Dkt. 1 at ¶¶ 4–5). Scottsdale is incorporated in Ohio, has its principal place of business in Arizona, has offices in New York, and issues insurances policies in Illinois. (Dkt. 1 at ¶ 8) (Dkt. 1-1 at 7, 111–13). On the facts presented to this Court, Scottsdale seems to have no direct connection to the State of Indiana. In fact, given the business it conducts in Illinois, the facts tend to show that Illinois would prove a more convenient forum for Scottsdale than Indiana. Because Scottsdale has not demonstrated that Illinois is a more inconvenient forum for it than Indiana, this factor also weighs against transfer. *See In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 665 (7th Cir. 2003) ("[W]hen the inconvenience of the alternative venues is comparable there is no basis for a change of venue; the tie is awarded to the plaintiff…").

## II.    The Interests of Justice

"In considering the interests of justice, courts weigh additional factors, including: (1) the speed at which the case will proceed to trial; (2) the court's familiarity with the applicable law; (3) the desirability of resolving controversies in each locale; and (4) the relation of each community to the occurrence at issue." *Hanover Ins. Co.*, 891 F.Supp.2d at 1025 (citation omitted).

The first factor is neutral. While an average judge in the Northern District of Illinois has more pending cases than in the Northern District of Indiana, the two districts are comparable in the time it takes civil cases to proceeds to trial. *See* Federal Court Management Statistics

(September 30, 2020), available at https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2020/09/30-1 (reporting that as of September 20, 20202 an average judge in the Northern District of Illinois had 714 pending cases, while judges in the Northern District of Indiana had an average of 593 pending cases); Federal Court Management Statistics (December 31, 2018), available at https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2018/12/31-3 (reporting that for the twelve-month period ending December 31, 2018, the median time for civil cases to proceed from filing to trial in the Northern District of Illinois was 38.3 months and 38.8 months in the Northern District of Indiana).

On the second factor, it is unclear which state law governs the Policy because the Policy does not contain a choice-of-law provision. Scottsdale argues Indiana law applies. Plaintiffs do not address the issue. For purposes of this motion, the Court assumes *arguendo* that Indiana law applies.

Finally, factors three and four weigh in favor of transfer. Although the actions at issue did not take place in Indiana, Indiana courts have a greater interest than Illinois courts in deciding whether alleged harm caused by an Indiana nursing facility is covered by insurance.

In summary, the convenience factors counsel against transfer while the interests of justice factors weigh in favor of transfer. This is insufficient to justify a venue transfer. *In re Nat'l Presto*, 347 F.3d at 664 ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."). Scottsdale's motion is thus denied.

## **CONCLUSION**

For the foregoing reasons, Scottsdale Insurance Company's motion to transfer venue [7] is denied.

_____
Virginia M. Kendall
United States District Judge

Date: March 4, 2021