**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EXTENDED CARE CLINICAL, | ) | |
| | ) | |
| Plaintiff, | ) | No. 20 c 7132 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| SCOTTSDALE INSURANCE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

On June 9, 2021, the plaintiffs filed a motion to compel production of 210 claims files. The defendant filed a response brief a few days later, and Judge Kendall set the matter for oral argument. Judge Kendall heard oral argument on the motion on June 23rd, but then referred the motion to me that same day. [Dkt. ##49, 50].[1] Here is the history of the controversy.

The plaintiff served the document requests at issue on March 26, 2021. [Dkt. #45-1, Page 1/203, Par. 2]. That meant responses were due April 26th, but on that day, the parties apparently had a brief telephonic Local Rule 37.2 conference. Neither side indicates what, if anything was accomplished. The defendant's responses were simply the same handful of repeated, unamplified, unexplained, "boilerplate" objections: the requests were overly broad and sought documents not relevant to the lawsuit; responding would be unduly burdensome; and the documents sought were protected by the attorney-client privilege and/or work product. [Dkt. #45-1, Page 57, *et seq.*].[2] A

---

[1] An earlier Local Rule 37.2 conference on April 26 apparently came to nothing.

[2] Boilerplate objections are equivalent to no objections at all. *See* p. 4, *infra.*

couple of emails were then exchanged, but in the two and a half months since the requests were served, the parties remain essentially right where they were on April 26th. The plaintiff hasn't budged and wants all correspondence, documents, emails, and communications in every one of those 210 insurance claims files. Defendant has made a pair of somewhat illusory offers of "compromise": it want to produce only 15 files, or – with plaintiff picking up the tab for defendants' attorneys' fees – it will produce all 210 after what one must imagine will be an expensive, if tardy, review for attorney client privilege. [Dkt. #44-1]. Obviously, there has not been compliance with the Local Rule's underlying purpose.

Of course, the files requested must have relevance to the case. And they are. SM Healthcare is a healthcare facility that operates the Dyer Nursing & Rehabilitation Center in Dyer, Indiana ("Dyer"). Dyer Nursing & Rehabilitation Center entered into a service agreement with Extended Care Clinical, LLC and Extended Care Consulting, LLC ("the EECs") under which those two healthcare consulting companies would combine obtain insurance coverage for the Dyer Nursing & Rehabilitation Center. To do so, they contacted an insurance broker, Worthy Insurance Group. Finally, Worthy procured a liability insurance policy from defendant, Scottsdale Insurance Company in Arizona. For good measure, Nationwide Insurance is somehow involved with Scottsdale.

The policy that came out of all that was effective from March 1, 2018 through March 1, 2019, with SM Healthcare and the ECCs as the insureds. It was a "claims made and reported policy", meaning it provides coverage only for those claims reported to Scottsdale during the policy period and in accordance with the reporting requirements in the Policy. Potential claims that result in actual claims or lawsuits after the policy period are covered so long as they are adequately reported during the policy period. [Dkt. ##26, at 1-2; 43, at ¶. 12].

Charles Anderson was a resident at Dyer Nursing & Rehabilitation Center. On Christmas Eve of 2018, Mr. Anderson fell and was taken to the emergency room, "and" as plaintiffs obliquely put it, "never returned to Dyer." [Dkt. #43, Par. 16]. Sadly, Mr. Anderson passed away on January 12, 2019. [Dkt. #1-1, Page 106/113]. On February 20, 2020, Mr. Anderson's estate brought a wrongful death suit in Indiana state court against Dyer, alleging that Dyer breached applicable standards of care in caring for and treating Mr. Anderson. [Dkt. #1-1, Page 105 *et seq.*/113]. On February 23, 2019, the ECCs reported Mr. Anderson's fall via email to Scottsdale, along with other incidents involving Mr. Anderson, including lacerations and bruises he sustained while he was at Dyer. [Dkt. #43, Pars. 17-27]. Plaintiff learned of the Anderson lawsuit on March 23, 2019, and submitted it for defense and indemnification to defendant the same day. [Dkt. #43, Pars. 28-29].

On April 3, 2020, the defendant denied indemnification and declined to defend, explaining that the claim was first made against the insured when Dyer was served, which was after the expiration of the Policy on March 1, 2010. [Dkt. #43-2, Page 15/16]. But plaintiffs contend that their February 23rd emails served as notice of potential claims under the policy. [Dkt. #43, Par. 12]. And so, they filed this declaratory judgment action. Since then, defendant has explained that those emails weren't adequate because: (1) plaintiffs did not state the reason for anticipating a claim in the information they submitted to Scottsdale for Mr. Anderson's incident; (2) plaintiffs did not list all of the persons involved in Mr. Anderson's incident, but only listed the creator of the report; and (3) plaintiffs did not indicate the circumstances by which they became aware of the potential claim. [Dkt. #21, at 2-3]. Here's where those 210 files come in: plaintiffs argue that defendant never required these three things before accepting a Notice of Potential Claim and, in fact, accepted 210

3

such submissions that did not include the three things defendant alleges were missing from the report on Mr. Anderson.

As already noted, defendant has objected in cursory fashion to producing the files on the basis of relevance, undue burden, and attorney-client privilege and/or work product. No further explanation was provided. Not surprisingly, court after court has rejected these unadorned boilerplate "objections" as tantamount to no objections at all. *See, e.g., Vera Bradley Designs, Inc. v. Aixin Li*, 2021 WL 780718, at *3 (N.D. Ill. 2021); *Zambrano v. Sparkplug Capital, LLC*, 2020 WL 1847396, at *1 (N.D. Ill. 2020); *Gevas v. Dunlop*, 2020 WL 814875, at *1 (N.D. Ill. 2020); *Harris Davis Rebar, LLC v. Structural Iron Workers Local Union No. 1, Pension Tr. Fund*, 2019 WL 454324, at *4 (N.D. Ill. 2019); *BankDirect Capital Finance, LLC v. Capital Premium Financing, Inc.*, 2017 WL 5890923, at *2 (N.D. Ill. 2017); *Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 2011 WL 13262362, at *3 (N.D. Ill. 2011). Objections like these are little more than a tactic to obfuscate and delay. In this case, the fact that they are nothing more than a cut-and-pasted, autonomic responses, is amply demonstrated by the circumstances.

First, there is the claim the documents are not relevant. That's obviously not true as they are clearly relevant to plaintiffs' claim and certainly to defendant's defense. According to the plaintiffs, based on the manner in which defendant received the 210 previous notices, the rationale for rejecting the ones related to Mr. Anderson is contrived and unpersuasive. Defendant seems to have thought better of its relevance objection in the last several weeks and doesn't mention it in its response brief. Instead, the defendant talks about burden in terms of proportionality to the needs of the case and the likely benefit of the discovery. But, of course, saying something is not proportional does not make the request improper. "Talk is cheap," *Planned Parenthood of Indiana and Kentucky v. Box*, 949

F.3d 997, 998 (7th Cir. 2019), and "unfortunately... saying so doesn't make it so...." *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir.2010); *Madlock v. WEC Energy Group, Inc.*, 885 F.3d 465, 473 (7th Cir. 2018); *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 770 (7th Cir. 2020)("Notably absent from these allegations, however, is any proposed proof that state actors, not municipal actors, were engaged in this *de facto* discrimination."); *Donald J. Trump for President, Inc. v. Secy of Pennsylvania*, 830 F. Appx 377, 381 (3d Cir. 2020)("But calling an election unfair does not make it so. Charges require specific allegations and then proof. We have neither here."). Even the Solicitor General's unsupported assertions are not enough. *Digital Realty Trust, Inc. v. Somers*, _U.S._, 138 S.Ct. 767, 779 (2018).

Defendant has already accumulated all the files, so the only "burden" is reviewing them in order to determine whether there really is a basis for the assertion of the attorney-client privilege. [Dkt. #45, at 4-6]. But that task is inherent in almost all discovery in almost all cases and is not the kind of "burden" envisioned by the Rules. The unexplained objections defendant asserted in its response did not amount to proper, timely claims of privilege, of course. *See* Fed.R.Civ.P. 26(b)(5)A)("When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must . . . describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."); *Hobley v. Burge*, 433 F.3d 946, 947 (7th Cir. 2006)("An attorney asserting privilege must timely support that claim with a "privilege log" which describes the nature of each document being withheld."). Worse, those who compiled the responses and lodged the privilege and work-product objections would *not even see* the documents they were withholding for

5

another *five weeks* after they made the objections. [Dkt. #44-1, Page 1/3 (June 3rd email from defendants' counsel stating they had "now received the 210 claim files from [their client] Scottsdale.")]. It would not seem that one could properly claim that unseen documents are privileged.

That leaves "proportionality," which the defendants did not really raise until their response brief several weeks after they served their responses. But that is too late. In any event, based on that brief, the defendant thinks the plaintiff has all the information it needs because it was the one who sent the claims information to the defendant in the first place. But the idea is not what the defendants got from plaintiff, but how it responded to the information. Was it sufficient? If sufficient, why? Was there a reason to treat those notices differently than the ones about Mr. Anderson? One could go on. But, it is already clear that the files are relevant so the question is, are 210 files out of proportion with the needs of the case? That's almost impossible to say based on the information before the court. The defendant seems to think that either only about a dozen of those 210 files would be proportionate or, all the files if it was reimbursed for the work its attorneys do in redacting information from those files. While it may amount to little more than a guess to determine what number of files might be proportionate, 15 is not enough in a case involving recompense for a man's death and the defendant's other offer – plaintiff paying for defendant's attorneys to cull the production plaintiff requested, *see, e.g., Club Gene & Georgetti, LP v. XL Ins. Am., Inc.*, 2021 WL 1239197, at *3 (N.D. Ill. 2021); *Towne Place Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 284 F. Supp. 3d 889, 900 (N.D. Ill. 2018) – is not acceptable. If defendant were appropriately concerned with the immense burden and expense it claims will come from complying with these relevant requests, it had over three months to come up with a realistic offer of

compromise, perhaps involving some sort of stipulation that would alleviate much of the alleged burden of going through the files. Perhaps no compromise of any sort would have worked. But one will never know.

As the resolution of discovery disputes is committed to the court's broad discretion, *Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016); *James v. Hyatt Regency Chicago*, 707 F.3d 775, 784 (7th Cir. 2013), it behooves parties to work things out on their own. Discretion denotes the absence of hard and fast rules. *Langnes v. Green*, 282 U.S. 531, 541 (1931). Being a range, not a point, discretion allows two decision-makers – on virtually identical facts – to arrive at opposite conclusions, both of which constitute appropriate exercises of discretion. *Compare United States v. Boyd*, 55 F.3d 239 (7th Cir. 1995) with *United States v. Williams*, 81 F.3d 1434 (7th Cir. 1996); *see also Mejia v. Cook Cty., Ill.*, 650 F.3d 631, 635 (7th Cir. 2011)("it is possible for two judges, confronted with the identical record, to come to opposite conclusions and for the appellate court to affirm both."); *United States v. Bullion*, 466 F.3d 574, 577 (7th Cir. 2006)("The striking of a balance of uncertainties can rarely be deemed unreasonable...."); *Sanders v. Cangiolosi*, 2021 WL 1121084, at *2 (N.D. Ill. 2021). A party that steadfastly maintains its position without budging – as the parties have essentially done here – could be "right", but find itself on the losing side, and properly so, when the matter comes before the court and the court's discretion leads it to accept the other side's "right" position. A negotiated outcome is more likely to give both sides at least a somewhat satisfactory resolution. At least one that does not require judicial intervention, as the Local Rule and the Federal Rules of Civil Procedure envision. *Infowhyse GmbH v. Fleetwood Grp.*, 2016 WL 4063168, at *2 (N.D. Ill. 2016).

In this instance, an appropriate exercise of discretion involves granting of the plaintiff's

motion. Given the facts and history of the case thus far, opting for too few claims files as opposed to opting for a greater number of files seems inappropriate. *Cf. Velez v. City of Chicago*, 2021 WL 1978364, at *4 (N.D. Ill. 2021). The plaintiff's motion [Dkt. #44] is granted. As the production and review of the 210 files will visit some burden and expense on both sides – as virtually all discovery inevitably does in every case, *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1988),[3] the parties are free to come to some other resolution of the present issue. Indeed they are encouraged to do so. If they cannot do so within the next 10 days, this Opinion will govern and compliance must begin on 7/19/21 and must be completed by 8/23/21. Production shall be on a rolling basis.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 7/8/21

---

[3] Discovery by its very nature is intrusive and invasive. *Bond v. Uteras*, 585 F.3d 1061, 1067 (7th Cir. 2009); *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1988). Unfortunately, it is not generally short and free of burdens. *Miller UK Ltd. v. Caterpillar, Inc.*, 2013 WL 474389, 1 (N.D.Ill. 2013).